No. 34,243

ALICE NEISWENDER, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SHAWNEE, *Appellant*.

(101 P. 2d 226)

Opinion filed April 6, 1940.

*Paul L. Harvey*, of Topeka, for the appellant.

*Edward Rooney, Jacob A. Dickinson* and *Edward Rooney, Jr.*, all of Topeka, for the appellee.

The opinion of the court was delivered by

HOCH, J.: Plaintiff's husband was drowned when his car broke through the railing on a Shawnee county bridge and fell into the Kaw river. In an action for damages, the jury found generally for the county, and answered special questions. The trial court granted a new trial on the sole ground that it had submitted the cause to the jury on a wrong theory of law and was therefore dissatisfied with both the general and special verdicts. Appellant contends that the court was right in the instruction, and appeals from the order granting a new trial. Appeal is also taken from an order overruling defendant's demurrer to the plaintiff's evidence and from an order overruling a motion for a directed verdict.

The essential facts may be briefly stated. On February 8, 1937, Robert R. Neiswender, husband of the plaintiff, Alice Neiswender, was driving his car west across the Sardou bridge, which spans the Kaw river between Oakland and the city of Topeka. The bridge is

maintained by Shawnee county. His car struck the left side of a car going east, was deflected to the south, and went through the south railing of the bridge.

The plaintiff alleged that the railing was defective, being improperly constructed, being built of materials of insufficient strength to meet the ordinary requirements of a public bridge, that it had no wheel guards, that the defective condition constituted a danger to the traveling public which had existed and was known to the chairman of the board of county commissioners for more than five days before the accident.

Two questions are presented:

First, should the order granting a new trial be set aside?

Second, was the plaintiff's evidence sufficient to take the case to the jury?

The question of appeals from orders granting a new trial was recently considered, in a somewhat similar situation in the case of *Pugh v. City of Topeka*, 151 Kan. 327, 99 P. 2d 862. The trial court there expressed the opinion that the action had been tried on a wrong theory of law, but also said that it was dissatisfied with the verdict "for many reasons." The law question upon which the trial court commented not being definitely presented, we did not consider it. But in the instant case the sole ground given for granting a new trial was that the case had been submitted upon a wrong theory of law. The law question is clearly raised by the record and will be considered.

The instruction in question reads as follows:

"From the evidence it appears that there was a collision between the car that the deceased was driving and another vehicle approaching from the opposite direction, immediately prior to the time the car went off the bridge. This makes it necessary for the court to submit for your determination the question whether the collision referred to, or the defective condition of the bridge, was the proximate cause of the death of Robert Neiswender.

"In this connection you are instructed that if you find that the defective condition of the bridge did nothing more than furnish a condition or give rise to a situation by which the death of Robert Neiswender was made possible, and that there intervened between such defective condition of the bridge and his death a distinct, successive and efficient cause of his death, even though his death would not have happened except for such defective condition of the bridge, then such defective condition of the bridge cannot be made the basis of the plaintiff's recovery; because; . . . if there was no danger existing to Robert Neiswender because of the defective condition of the bridge except

for the collision referred to, . . . then such defective condition of the bridge would not be said to be the proximate cause of his death.

"On the other hand, if you find that the death of Robert Neiswender was the result of the defective condition of the bridge irrespective of any intervening cause, then and in that event such defective condition of said bridge would be said to be the proximate cause of his death."

In sustaining the motion for a new trial the trial court said:

"1. The court believes and finds that he submitted the cause to the jury upon the wrong theory of law, and for that reason is dissatisfied with both the general and special verdicts in said cause and cannot approve them.

"2. The court finds that the case should have been submitted upon the principle of law set forth in the case of *Lincoln Township v. Loenig,* 10 Kan. App. 504, and the subsequent line of Kansas decisions following that authority."

The theory of the instruction as given was that only one, and not both, of the events or circumstances involved could be the proximate cause of the death. Where more than one act or event takes place, either of which might in itself have resulted in death or injury, and the two acts or events are in no way related, but are merely successive, many cases hold that only one can be said to be the proximate cause. But that is not the situation here. The collision and the condition of the railing were directly related in the accident. Moreover, it cannot be said that the collision was such an unusual happening that it could not reasonably have been anticipated by those responsible for maintaining the bridge.

The cases cited, which involve successive events, unrelated in character, have no bearing here. Appellant stresses *Smith v. Mead Construction Co.,* 129 Kan. 229, 282 Pac. 708. That case is readily distinguishable from this one. It involved damage to an automobile which ran into obstructions on a road under repair. The jury found that the construction company was negligent in not placing adequate warning signals and barriers; also, that the driver of the car by the use of ordinary care would have seen the obstruction in time to avoid the accident. The jury found, in answer to a question improperly submitted, that the accident was caused by both the negligence of the company and the negligence of the driver and that the negligence of the company was the proximate cause. This court said that both being found negligent, it was a question of law as to which was the proximate cause, and that the negligent driving being successive to and unrelated to the negligence of the company, it must be declared the proximate cause. In other words, the failure to have signals did not excuse the driver for thereafter driving carelessly.

There are other cases, such as *Lincoln Township v. Koenig*, 10 Kan. App. 504, 63 Pac. 90, cited by the trial court, wherein two causes have combined to produce an injury, both of which are in their nature proximate, but only one of which involves culpability. In such cases the fact that neither party was guilty of negligence in the one cause does not relieve from liability the party whose negligence was responsible for the other contributory cause.

The instruction in the instant case failed to recognize that two or more events may combine to produce a result and both be a proximate cause. (*Street Rly. Co. v. Stone*, 54 Kan. 83, syl. ¶ 7, 37 Pac. 1012; *Pinson v. Young*, 100 Kan. 452, 455, 164 Pac. 1102; *Acock v. Kansas City Power & Light Co.*, 135 Kan. 389, 10 P. 2d 877; *Tilden v. Ash*, 145 Kan. 909, syl. ¶ 2, 67 P. 2d 614; *City of Clay Center v. Jevons*, 2 Kan. App. 568, 44 Pac. 745; Restatement, Torts, § 439, and comments *a* and *b*.) The instruction was erroneous and a new trial was properly granted.

Second: Did the court err in overruling the defendant's demurrer to the plaintiff's evidence?

This issue narrows to two questions. Was there competent evidence that the railing was defective and dangerous, and, if so, did the defendant have notice of it at least five days before the accident, as provided in the statute (G. S. 1935, 68-301)?

As to the condition of the bridge railing, we find ample evidence in the record to require submission of the issue to the jury. A member of the State Highway Patrol, who visited the scene soon after the accident, said that the timber that was broken was rotten on both sides and that rotten pieces were lying near. Other witnesses, including two construction engineers, testified as to the defective construction and condition of the railing generally. A witness who saw the car go into the river and visited the scene immediately afterward testified: "After it toppled over I went down and examined the railing where the car broke through. The railing was in very poor condition, split and in some places rotted. There were places where you could pull off chunks with your hand." Other testimony relative to the absence of a "wheel guard" and to other alleged defects in construction need not be recited. We are not the judge of the facts and do not weigh conflicting evidence. As to the construction and condition of the railing, the testimony for the plaintiff was clearly good as against demurrer.

On the question of whether there was substantial evidence show-

ing or tending to show that the county had statutory notice of the defective and dangerous condition of the railing, we do not find the record quite so convincing. We have concluded, however, after careful examination, that there was enough to go to the jury. The chairman of the board of county commissioners testified that he made a special personal inspection of the bridge sometime in the spring of 1936, which would be about eight or nine months before the accident. He testified:

- "We looked over the bridge, at the railing, and saw the condition it was in. The bridge does not have and did not have any wheel guards, and whatever condition the railing was in, I saw it. . . .

"We did not see any places where the rails were rotted out so we could lift them out with our fingers; we did not see any place where the boards had rotted so they could be pushed out by my foot. . . . When I made my inspection in 1936, I did not see any wooden boards along the railing where I could take my foot and kick the upright pieces out. My only visit there was in the spring of 1936 and I saw nothing of that kind.. We walked by and looked the wooden railing over."

It will be noted that he did not testify affirmatively that the railing was in good condition. Actual knowledge has been held to be actual notice within the requirements of a similar statute. (*Madison Township v. Scott*, 9 Kan. App. 871, 61 Pac. 967.) Also, it is not necessary that there be notice of a defective condition existing at the exact spot where the accident occurs. (*Mosier v. Butler Co.*, 82 Kan. 708, 109 Pac. 162.)

Several witnesses testified that they had crossed the bridge frequently during the several years just prior to the accident, had noticed the bad condition of the railing, and that there had been no substantial change generally in the condition of the railing during that time. One such witness testified:

"I cross that bridge frequently and it was in the same condition on the day that Mr. Neiswender was drowned that it had been for several years."

While other witnesses testified as to certain repairs having been made from time to time, we are here of necessity—upon demurrer—considering only the testimony most favorable to the plaintiff. We think the plaintiff was entitled to have the jury decide whether there had been sufficient notice. For reasons already stated, the motion for a directed verdict requires no attention.

We find no error in the record. The judgment is affirmed.

HARVEY, J., not sitting.