No. 35,853

M. M. Brock, *Appellee*, v. The State Highway Commission, Etc., *Appellant*.

No. 35,854

Mrs. Kathryn Connell, *Appellee*, v. The State Highway Commission, Etc., *Appellant*.

No. 35,855

Carl Brock, *Appellee*, v. The State Highway Commission, Etc., *Appellant*.

No. 35,856

Mrs. M. M. Brock, *Appellee*, v. The State Highway Commission, Etc., *Appellant*.

(139 P. 2d 811)

Opinion filed July 10, 1943.

*Marc Boss,* assistant attorney general and attorney for the state highway commission, and *Otho W. Lomax,* of Topeka, argued the cause, and *Barton E. Griffith,* of Topeka, was on the briefs for the appellant.

*Lester M. Goodell,* of Topeka, argued the cause, and *Alfred E. Carroll* and *C. E. Carroll,* both of Alma, *J. L. Hunt, Margaret McGurnaghan, John H. Hunt* and *George M. Brewster,* all of Topeka, were on the briefs for the appellees.

The opinion of the court was delivered by

Smith, J.: These actions were brought to recover damages alleged to have been sustained on account of a defective highway. Judgment was for the plaintiffs overruling the demurrers of the defendant to the petitions. The defendant appeals.

The actions were brought by one Brock, who was driving the automobile which was involved in the injury, and by three people

who were passengers in this automobile. The petitions were identical except for the allegations about the party who was bringing each action and the amount of damages. On that account the allegations in the petition of the Brock case will be noted in this opinion. The cases were consolidated in the court below. The demurrers were argued together and when the appeal was taken they were consolidated in this court.

The petition alleged that on the 17th day of December, 1939, about six o'clock in the evening, the plaintiff was driving his automobile in an easterly direction on highway 10 at a point near the peak of a hill and he collided with an automobile being driven by one Campbell, who was driving on the highway in a westerly direction; that at the time of the collision each automobile was being driven at a reasonable and proper rate of speed, that is, thirty miles an hour; that the automobile being driven by Campbell was immediately prior to and at the time of the collision being driven with its right wheels within eighteen inches of the north ditch of the highway. This would place the Campbell automobile on its own side of the road. The petition further alleged that the automobile being driven by plaintiff was being driven at the time and immediately prior to the collision with its right wheel within eighteen inches of the north edge of a ridge of sand, which is described later in the petition. This would place plaintiff's car on its own side of the road. The petition alleged that the collision was directly and proximately caused by the defective condition of the highway and described this defective condition as follows:

"(a) Said highway at said point was of sand and gravel, having ditches extending on each side thereof at a depth of approximately two to three feet. That immediately beyond said ditches a sand and gravel bank existed extending perpendicularly to a height of from four to six feet at or near the peak of said hill where the collision occurred.

"(b) For many months prior to December 17, 1939, the width of said highway from shoulder to shoulder was approximately eighteen feet.

"(c) For many months and during all the time the defendant highway commission maintained said highway, the slope of said roadway at and near the peak of said hill where the accident occurred was such that the drivers of two vehicles meeting at or near said point were prevented from seeing each other beyond a distance of approximately 125 feet.

"(d) Said defendant, through its agents, servants and employees, placed or caused to be placed a dangerous obstruction upon and along said highway and more particularly at or near the peak of said hill where said collision occurred, in that it placed or caused to be placed at said point a ridge of dark, muddy-colored sand of the same general color and appearance as the remain-

ing portion of said highway, upon the south side thereof, the south edge of the base of said ridge of sand being located upon said highway at or near the peak of said hill at a distance of approximately three feet from the edge of the south shoulder of said highway, said ridge at said time being from two and one-half to three feet wide at the base and from one to three feet in height. In addition thereto, said defendant had placed or caused to be placed at said point at or near the peak of said hill, immediately north of said ridge of sand, a pile of sand from two to three feet in width, its height varying from ten inches to three feet, which extended north into the highway a distance of approximately four to six feet from said ridge of sand, leaving approximately eleven feet open for travel and free from obstruction in said highway. Said condition of said highway as described herein had existed for more than five days prior to December 17, 1939.

"(e) That the condition of said highway as it existed at or near the peak of the hill where the collision occurred, and more particularly the obstruction then existing in said highway, could not be seen by travelers using said highway, whether they were approaching said hill from the east or the west; that due to the slope and grade of said hill, this plaintiff and Howard Campbell, the driver of the other car involved, had no opportunity to stop their cars, turn to one side or to take any other precautions for their safety due to the fact that said dangerous and defective condition then existing in said highway was not open to view but was concealed and could not be seen by either driver of the two cars involved in said collision.

"(f) At said time there were no stop signs, warning signs, slow signs, danger signs, caution signs, or signs of any kind or character to advise the traveling public of the dangerous character of said highway, and more particularly no signs to warn the traveling public of the dangerous and defective condition of said highway as it existed at or near the peak of the hill where the accident occurred."

After a motion of defendant to make the petition more definite and certain and to strike certain portions had been overruled the defendant demurred to it on the ground that it did not state a cause of action in favor of plaintiff. This demurrer was overruled—hence, this appeal.

The defendant points out the well-established rule that whether or not the immediate condition in a highway constitutes a defect within the meaning of the statute is a question of law. This court has considered many cases, sometimes on a demurrer to the petition, sometimes on a demurrer to the evidence and sometimes on a consideration of answers to special questions. In many of these cases we have held that the particular facts set out in the petition or proved by the evidence or found by the jury did not constitute a defective highway within the meaning of G. S. 1935, 68-419. Defendant argues further that since the plaintiff resisted the motion of the defendant to make the petition more definite and certain and

since it is an action wherein the state has waived its immunity from liability it should be strictly construed. For the purpose of this opinion we concede the validity of the first of these rules, that is, the question of whether or not the facts set out in the opinion describe a defective highway is a question of law. As to the contention of the defendant that the petition must be construed strictly on account of the fact that the motion of the defendant to make the petition more definite and certain was resisted by the plaintiff and overruled by the trial court the petition should be construed strictly on this account insofar as a consideration of the allegations of the petition at which the motion to make more definite and certain was directed is concerned but not as to other allegations at which no motion to strike was leveled. This motion to strike will be dealt with later in this opinion. As to the contention of the defendants that the petition should be strictly construed because the action is based on a statute wherein the state has waived its immunity from liability, we have examined the authorities cited to sustain this proposition by the defendant and find that they hold that a statute waiving immunity from liability must be construed strictly. We do not find any authority that a petition based on such a statute must be construed strictly.

When we examine the allegations of the petition we find that on account of the windrow of sand along the south side of the highway, together with the pile of sand placed immediately north of the windrow, and extending north farther into the highway, there was not more than nine feet of highway left in which cars could proceed at this particular point. This constituted a sudden narrowing of the space available for cars to use the highway.

In *Neiswender v. Topeka Township*, 148 Kan. 113, 79 P. 2d 839, the defect in the highway was the precipitous drop in grade of sixty-five feet within a distance of three hundred feet and an extremely rough and uneven surface of the highway. The petition alleged that a car being driven by the plaintiff came to this precipitous drop suddenly and upon reaching the top was precipitated to the ground and turned over, killing the driver. We held that the petition stated a good cause of action for a defective township highway.

We followed *Williams v. State Highway Comm.*, 134 Kan. 810, 8 P. 2d 946, where we said:

"A condition of a highway which renders it dangerous for the public traveling over it is certainly a defect."

In *Watson v. Parker Township,* 113 Kan. 130, 213 Pac. 1051, the jury answered special questions and found in favor of the plaintiff. On the question of whether or not the established facts constituted a highway defective it appeared that the alleged defect was a deep ditch which was concealed by weeds into which the plaintiff ran on account of his efforts to avoid a collision with another car that was being driven thereon. This court spoke of the general rule to the effect that it was not necessary to keep the full width of a country road fit for public travel and as long as the highway was in a safe and passable condition to serve the reasonable needs of the public the fact that unused parts of the highway were dangerous did not constitute the highway defective. This court held that whether or not under all the facts and circumstances the highway was defective was a question of fact which was properly left to the jury.

The case is analogous to the instant case in that the condition of the highway, which was the cause of the injury to the plaintiff, was due to a situation with which he was suddenly confronted and of which he had no warning. In the instant case the sudden narrowing of the road on account of the windrow of sand and pile of sand, which the petition states could not be seen by travelers using the highway when approaching from either direction, constituted a hazard of which the plaintiff could have no warning until too late to stop.

To the same effect is *Story v. Brown County,* 116 Kan. 300, 226 Pac. 772.

In *Collins v. State Highway Comm.,* 138 Kan. 629, 27 P. 2d 216, the injury occurred on a gravel road. The defect complained of was a chuck hole two or three feet long, eighteen inches or two feet wide and six to eight inches deep. This court said:

"It is the bounden duty of every such authority to keep in a safe condition for public travel so much of the width of the road as is commonly used therefor. The commonly used portion of the highway where plaintiff's car was upset was from twenty-five to thirty feet in width. Therefore the road to that width should have been kept in a safe condition for travel." (p. 631.)

In *Collins v. State Highway Comm.,* 134 Kan. 278, 5 P. 2d 1106, the injury was caused by the plaintiff's car running into deep ruts just at the edge of the concrete pavement. The pavement itself did not have any defect in it but this court said—

"There was testimony that the purpose of shoulders is to support the concrete slab, and not to provide a way for travel, which is true in a sense. But

a hard-surface highway may be defective because it has no shoulders. Lack of any shoulder for a concrete slab eighteen feet wide, eighteen inches above the surface, and a mile long, would manifestly render the highway defective for purposes of travel. Of course the slab is intended to be and is the traveled way; but it is a matter of common knowledge that careful automobile drivers not only may on occasion, but frequently must, use the shoulders to some extent as a part of the highway, and a pitfall in a shoulder, adjoining or even adjacent to the slab, may constitute a defect in the highway." (p. 283.)

In *Cheney v. State Highway Comm.*, 142 Kan. 149, 45 P. 2d 864, the injury occurred on a bituminous-mat highway. This court quoted from *Williams v. State Highway Comm.*, 134 Kan. 810, 813, as follows:

"'A condition of a highway which renders it dangerous for the public traveling over it is certainly a defect. The evidence tends so strongly to show that the highway was in a dangerous condition that whether it amounted to a defect under the statute became at least a question for the determination of the jury.'" (p. 153.)

When these rules are applied to the instant case we find that a fair interpretation of the facts alleged in the petition is that there was an obstruction placed in the highway so that the portion of the highway possible to be traveled upon was made so narrow that two cars could not pass without colliding. The petition alleges this condition to be the proximate cause of the injury sustained by the plaintiff.

The defendant argues that the petition is defective because it did not state just what happened at these sand piles that caused the cars to come together. The defendant filed a motion to make the petition definite and certain. It asked that the plaintiff be required to state whether or not the sand ridge was in a straight line; that a more definite statement be made as to the height of the pile of sand in the highway and the height of the ridge of sand be more definitely described. In another paragraph of this motion defendant asked that the plaintiff be required to state what caused it to be impossible for the drivers of either car to see the alleged obstruction and that the plaintiff be required to state whether or not in ordinary practice there was anything requiring warning signs to be established.

The motion also asked that if the plaintiff was not able to state that the ordinary practice of the highway commission was to establish warning signs then the paragraph about warning signs should be stricken. This motion was overruled. We have examined the allegations of the petition which the defendant sought to have made

more definite and certain and we fail to see where there is any uncertainty or ambiguity in the petition with reference to the matters at which the motion was directed.

The matter of interest to us in the question we are considering is that the motion did not ask that the plaintiff be required to state just how the collision occurred or just how the two cars came together. The petition did describe the defect in detail and contained an allegation to the effect that the collision was directly and proximately caused by the defective condition of the highway. As we have observed, this allegation was not attacked by any motion on the part of the defendants to make it more definite and certain. In the absence of such a motion the statement as to the defect being the proximate cause of the collision is good on a demurrer to the petition even though it was a conclusion of fact. See *Roberts v. Pendleton,* 92 Kan. 847, 142 Pac. 289; *Neosho County v. Spearman,* 89 Kan. 106, 130 Pac. 677 and *Ball v. Oil & Gas. Co.,* 113 Kan. 763, 216 Pac. 422.

Defendant makes a statement in its brief that there was no allegation that there was not sufficient travel surface to meet the needs of these two drivers and that so far as the allegations of the petition are concerned the width of the roadway was constant. A fair interpretation of the facts alleged in the petition is that there was a place in the roadway where the traveled surface was eleven feet or less in width. This was not enough for two cars to pass.

The allegations of the petition that both cars were proceeding at a reasonable rate of speed, that is, thirty miles an hour, and that there were no warning signs of the alleged defect and that at the time of the collision or immediately prior thereto each car was on its own right-hand side of the road certainly are not such a description of the defect and the collision as to constitute, on the part of the driver of the Brock car, contributory negligence.

The judgment of the trial court is affirmed.

WEDELL, J., concurs in the result.

THIELE, J. (dissenting): I dissent because I think a proper disposition has not been made of this appeal.

We need notice only two paragraphs of the petition—No. 4 which is summarized in the court's opinion, and No. 5 which is quoted in full.

The whole theory of a petition to fasten liability on this defendant

for an accident happening on a highway must be that the highway was defective and that the defect was the legal cause of the accident. That is made clear by the statute authorizing maintenance of such an action and our decisions interpreting it. See G. S. 1935, 68-419, and annotations as shown in that statute and in the supplements to it.

It is to be observed first that paragraph 4 charges that at a time stated plaintiff was driving his car eastwardly on a highway alleged in paragraph 5 to be eighteen feet wide, with the right wheels of the car within eighteen inches of the north edge of the sand ridge on the south side of the highway, and that he collided with a car driven westwardly by one Howard Campbell, the right wheels of whose car were within eighteen inches of the north side of the highway. That is the whole story of the accident as disclosed by the petition, except as paragraph 5 deals with alleged defects in the highway.

I think it clear that there is no allegation of defect contained in 5 (a), (b) or (c). In 5 (d) it is alleged that there was a ridge of sand extending along the south side of the highway. Standing alone that is not an allegation of a defect. It is alleged that in addition to that ridge there was a sand pile extending onto the highway of sufficient size to leave free from obstruction and open for travel approximately eleven feet of the highway. The greater portion of the court's opinion is devoted to cases dealing with what is a defect. I shall not discuss those cases. Conceding that this last mentioned sand pile may be said to be a defect, and giving full force to the allegations in paragraph 5 (e) and (f), the next inquiry is, What did the defect have to do with the accident?

The petition states no facts to show why or how two cars, each allegedly on its own side of an eighteen-foot highway, collided. According to the petition, the sand ridge and the sand pile were on the plaintiff's side of the highway. He does not allege, however, that his car struck the sand pile, or that as he traveled along the highway he ever reached it, struck it, veered away from it, nor what did happen, nor does he make any such allegations with respect to the other car. It is not made to appear in any manner how the accident occurred, or that any alleged defect in the highway caused it. The rule that a pleader is entitled to a liberal construction of his pleadings and to all inferences that may be drawn from well-pleaded facts, does not help the plaintiff, for there is nothing pleaded from which it may even be inferred the alleged defect was the legal cause

260

of the accident. Lacking any such allegations the petition failed to state a cause of action against the defendant and its demurrer should have been sustained.

I am authorized to say that Mr. Chief Justice DAWSON and Mr. Justice HARVEY concur in the foregoing dissenting opinion.