No. 37,257

Virgil V. Cotter, *Appellee*, v. F. H. Freeto and F. H. Freeto Construction Company, Inc., *Appellants*.

(199 P. 2d 484)

Opinion filed November 13, 1948.

*Paul L. Wilbert,* of Pittsburg, argued the cause, and *A. B. Keller, C. A. Burnett, Richard A. Carpenter,* and *Perry L. Owsley,* all of Pittsburg, were with him on the briefs for the appellants.

*Karl K. Grotheer,* of Pittsburg, argued the cause, and *William J. Grotheer,* of Pittsburg, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Hoch, J.: This was an action to recover for personal injuries and property damage resulting from an automobile collision. The defendants demurred to the petition, the demurrer was overruled, and they appeal. Appellants contend, first, that the alleged acts of the defendants, even if construed to be negligent, were not the proximate cause of the accident; and second, that the allegations of the petition show on their face that the plaintiff was guilty of contributory negligence barring recovery.

Omitting formal averments, the allegations of the petition here pertinent may be summarized as follows: Prior thereto and on the 4th day of July, 1946, the defendants F. H. Freeto and F. H. Freeto Construction Company, Inc., were engaged, pursuant to a contract entered into between them and the Kansas State Highway Commission, in repairing, grading and constructing a four and a half mile

stretch of highway running east from Pittsburg, Kan., such highway being a dedicated and used public highway designated as Kansas Highway No. 126. At some time prior to July 4, 1946, the exact date being unknown to the plaintiff, the defendants caused the traveled portion of the highway to be dug up and graded and caused to be deposited upon and along the traveled portion a ridge of gravel, stone and debris about two and a half feet high and four feet wide, which ridge was left in a tortuous manner with the north edge thereof at about the center of the highway at some places and about four feet south of the center at other places, making the traveled portion of the highway narrow with the width varying between about eleven and fifteen feet. The traveled portion was made very rough and the grading combined with vehicular traffic caused the surface to be coated with about four inches of fine dust; said highway at said time and place was "impassable and dangerous to travel." There were no lights, signals, warning signs, detour signs or warnings of any kind on or about the approaches or roads leading to the highway, and nothing to warn travelers of the presence of the ridge of gravel and of the narrowness and varying widths of the traveled portion, or of the extreme roughness and dustiness of the highway. Defendants were careless and negligent in causing the above conditions to exist and permitting them to remain without placing lights, signals, detour signs or warnings of any kind and at the same time allowing vehicular traffic upon the highway while these conditions existed; defendants were careless and negligent in failing to close the highway and in failing to erect a "road closed" sign at the approaches to the highway and in failing to advise the public of the detour to said highway. Defendants knew or should have known that these conditions rendered the highway "impassable, dangerous to travel, unsafe and hazardous for vehicular travel, and too narrow for approaching vehicles to pass upon said highway." On July 4, 1946, at 7:30 in the evening, the plaintiff was driving his car, a four-door sedan, and being "unaware of the impassable and dangerous condition of said highway" entered the highway at a point about four miles east of Pittsburg and then drove westward upon the highway. After he had traveled westward for about one-half mile and had reached a point about three and a half miles east of Pittsburg, which point was "at or near the crest of a hill," he met a Ford coupé driven by one Lloyd Beasley, which was coming from the west. When the plaintiff saw the approaching

car "being about fifteen feet west," he stopped his car "on the extreme north edge of the traveled portion" of the highway in order to permit the approaching car to pass. "By reason of the dangerous and hazardous conditions of said highway as heretofore alleged, the driver of the approaching vehicle was unable to pass said plaintiff's vehicle, and by reason of the heavy coat of dust and the roughness of the highway and the narrowness of the highway at said place, the approaching vehicle was caused to run into and upon the said ridge of gravel and debris then and there lying in about the middle of the said highway, the width of said traveled portion of said highway at said time and place being about eight to eleven feet, all of which conditions caused the said driver of the approaching vehicle to lose control of his said automobile and run head on into plaintiff's automobile, injuring the said plaintiff as hereinafter set out. That the said accident was caused directly by the carelessness and negligence of the said defendants as heretofore set out"; by reason of the negligence of the defendants and "as the sole, direct and proximate result of the acts of negligence of said defendants," the two cars collided head on throwing the plaintiff with great force and violence upon the front portion and top and left side of his car as a result of which he sustained severe, painful and permanent injuries and his car was badly damaged (the nature and extent of the injuries and of the damage not being essential to consideration of the instant issues need not be recited). He asked damages in the sum of $25,000 for personal injuries and $500 property damage to the car.

The defendants filed a motion to strike certain portions of the petition and to make certain portions definite and certain. Insofar as the motion sought to strike portions of the petition, it is not here argued by appellants and we pass it. As to making the petition definite and certain, the motion sought to require the plaintiff to state where upon the highway the ridge of gravel, stone and debris was two and a half feet high and four feet wide and where on the highway the north edge of the ridge was at the approximate center and where its north edge was about four feet south of the center of the highway; to set out where the traveled portion of the highway was narrow, and where it was eleven feet wide and where it was fifteen feet wide; to set out where the surface of the highway was coated with about four inches of fine dust; to set out at what speed plaintiff was traveling after he turned west upon the highway and to set out at what speed the approaching car was traveling; to set out the

"width of the traveled portion of the highway at said place of accident."

The motion having been overruled, the defendants demurred to the petition; the demurrer was overruled, and this appeal followed.

At the threshold of any case like this stands the familiar rule that in testing the sufficiency of a pleading as against demurrer, its allegations are to be liberally construed in favor of the pleader and all reasonable inferences to be drawn therefrom indulged in his favor (*Rowell v. City of Wichita*, 162 Kan. 294, 300, 176 P. 2d 590; *Horton v. Atchison, T. & S. F. Rly. Co.*, 161 Kan. 403, 406, 168 P. 2d 928; *Hoffman v. Cudahy Packing Co.*, 161 Kan. 345, 347, 167 P. 2d 613). In connection with this rule, there is the further rule that if a motion to make definite and certain is successfully resisted, the allegations of a pleading when subsequently tested by a demurrer are to be strictly construed as to matters covered by the motion (*State Highway Comm. v. American Mut. Liability Ins. Co.*, 146 Kan. 187, syl. ¶ 2, 70 P. 2d 20, and cases listed on page 192; *Bell v. Bank of Whitewater*, 146 Kan. 901, 904, 73 P. 2d 1059).

The contentions of appellants may fairly be summarized as follows: First, under the facts as alleged, it was the collision which was the direct and proximate cause of plaintiff's injuries, and the alleged acts of negligence on the part of the defendants furnished at the most merely one of the existing conditions calling for greater caution and slower speed on the part of both of the drivers involved in the collision. The alleged acts of negligence of the defendants were not concurrent with subsequent and related incidents or causes to the extent that it may be said that together they constituted the proximate cause of the accident; at most they were a remote cause, and therefore did not constitute actionable negligence. Second, the plaintiff drove upon the highway at 7:30 in the evening on July 4 when it was still daylight, and drove one-half mile over the highway when its condition was obvious to him and when by the exercise of reasonable care he could not help knowing that the highway was "impassable, dangerous to travel, unsafe and hazardous for vehicular travel, and too narrow for approaching vehicles to pass." He must have seen the ridge of gravel, stone and debris lying in or near the center of the highway and running in a tortuous manner as alleged, making the traveled portion of the highway vary in width from eleven to fifteen feet. All the dangerous conditions of which complaint is made in the petition constituted a sufficient warning to

arrest the attention of any reasonably prudent person so that if he proceeded, he did so at his own risk; and if he had taken reasonable precautions for his own safety, the accident would have been averted. In other words, under the facts as alleged, even if the defendants' acts constituted negligence, plaintiff was guilty of negligence barring recovery.

It would unduly extend this opinion and not be helpful to discuss a great number of our former cases involving situations more or less similar to this one. The difficulty is not so much as to the abstract principles or rules laid down in the cases, but in appraising the facts of a particular case and in determining what rules are applicable. It will be sufficient here to limit our consideration in large part to cases upon which the parties principally rely.

Appellants stress *Lambel v. City of Florence,* 115 Kan. 111, 222 Pac. 64; *Railway Co. v. Columbia,* 65 Kan. 390, 69 Pac. 338, 58 L. R. A. 399; *Petty v. City of Cimarron,* 116 Kan. 141, 225 Pac. 1033; *Whitcomb v. Atchison, T. & S. F. Rly. Co.,* 128 Kan. 749, 280 Pac. 900; *Smith v. Mead Construction Co.,* 129 Kan. 229, 282 Pac. 708; and *Mosier v. State Highway Comm.,* 136 Kan. 468, 16 P. 2d 477.

In *Lambel v. City of Florence,* supra, the plaintiff who was injured in a collision at a street intersection sued the city for damages on the ground that it had negligently permitted the builders of a hotel to pile building materials on a corner lot near the intersection; that the materials encroached into the street and were piled so high as to obstruct the vision for persons who were driving south on one street or driving east on the other street. The plaintiff was driving south and after she had passed beyond the obstruction her car was struck by another car being driven east on the south side of the intersection. It was held that the negligence of the city in permitting obstructions to view, to remain where they were was not the proximate cause of the plaintiff's injuries but only furnished one of the conditions and that the proximate cause was the collision and the incidents immediately connected therewith. In the opinion it was said, in effect, that while the question of whether obstruction of the view constitutes the proximate cause of the injuries in such a case is ordinarily a jury question, it becomes a question of law for the court if the facts alleged show that there were two distinct and successive causes unrelated in their operation, one of which was a remote and the other the proximate cause of the injury. It was held that the obstructions complained of were not the direct and

immediate cause of plaintiff's injury and that the collision "was not an inevitable consequence of the obstruction to the view." It is unnecessary here to recite the facts set forth in the opinion in support of the view that at most the piles of lumber merely shortened the range of vision of drivers, thereby calling for slower speed and greater caution in approaching the intersection.

*Railway Co. v. Columbia,* supra, was an action to recover damages for the death of a locomotive fireman, his death having resulted from derailment of the engine when it struck some heavy grain doors which had been blown off and had fallen upon the track. The facts need not be recited further. The case is cited in support of the general rule that where two distinct and successive causes wholly unrelated in operation contribute to an accident, one of the causes is the proximate and the other the remote cause, and that where the facts show beyond question that there were two such distinct, successive and unrelated causes, the question of which one is the remote and which one the proximate cause is one of law for the court.

In *Petty v. City of Cimarron,* supra, the city had stretched a rope across a street to stop traffic and while a woman was attempting to cross a street near the rope, an automobile struck the rope causing it to strike her, knock her down and injure her. She brought action to recover damages from the city. Recovery was denied on the ground that the rope was a warning to persons not to drive or to walk into it; that the rope may have produced the condition, but it was the automobile which caused the injury and was its proximate cause.

In *Whitcomb v. Atchison, T. & S. F. Rly. Co.,* supra, the plaintiff, who was riding as a guest in an automobile, was injured when the car was driven into a ditch near the approach to a crossing and on the railroad right of way. In the petition charging negligence on the part of the driver of the car, it was also alleged that the railway company was negligent in failing to maintain a safe crossing over the railroad track, that the approach to the crossing was not of the width or grade required by the statute, and that the ditch or deep hole into which the car was driven was maintained by the company near the approach on its right of way without any guard rails, fence or warning. Passing by the question of whether the statute involved was designed to protect a guest from the negligence of his host, the court observed that "while a breach of statutory

duty is a form of negligence (*Roman v. St. Louis-S. F. Rly. Co.,* 120 Kan. 585, 245 Pac. 115) such negligence is actionable only when the injury complained of is one the statute was designed to prevent." This court said it was clear from the allegations that the railway company's failure to comply fully with the statute with reference to constructing and maintaining the crossing was not the thing which resulted in plaintiff's injury and was not the proximate cause of the injury (see cases cited, pp. 751-2 of the opinion).

In *Smith v. Mead Construction Co.,* supra, the defendants were contractors engaged in road work and the building of culverts on an improved highway, and in the course thereof had made an excavation sixteen feet wide and several feet deep. A plow used in the work was left on the highway a few feet from the opening and about fifty feet from the opening was a pile of sand near which a cement mixer had been left. A car driven by plaintiff's son drove onto the highway about 11:30 at night, having driven past a detour sign, ran into some obstruction in the road, onto the sandpile and the cement mixer, and landed upside down in the excavation, killing the son. Recovery was denied. The opinion dealt largely with the question whether the facts showed two distinct and successive causes, unrelated in their operation, and invoked the rule that if there are two distinct, successive and unrelated causes, the law regards one as the proximate and the other as the remote cause. The findings of the jury most favorable to the plaintiff were that the defendants were negligent in not fully complying with the statute in the matter of maintaining red lights. The court said: "There was no concurrent wrongdoing in this case. If both parties were negligent, as the jury found, the negligence of the one was successive and unrelated to that of the other. It is clear, not only from the findings of the jury but from the record of the case as a whole, that there would have been no injury to plaintiff's car had it not been for the negligence of its driver, and this must be held to be the active, proximate cause of the injury."

In *Mosier v. State Highway Comm.,* supra, the plaintiff brought action to recover for injuries sustained when he drove his car into an unfinished culvert on a highway under construction. Judgment for the plaintiff in the trial court was reversed here, this court holding that the facts disclosed that the plaintiff was guilty of contributory negligence as a matter of law. When the plaintiff approached a turn in the old road leading onto the part under repair

or construction, there were several road signs such as "slow" and "turn" and there had been a barricade which had been knocked down and the plaintiff drove by the signs and onto the new road over which there had been considerable travel, and had traveled about seven-eighths of a mile and when he got within 360 feet of an open culvert, he found piles of dirt which had not been leveled and found the road rough and bumpy. The road there had a down grade which kept the lights on his car from revealing the unfinished culvert until he was within 360 feet of it. He was driving at a speed of twenty-five or thirty miles an hour, and testified that he made every effort to stop his car but went into the culvert and sustained serious injuries. In the opinion it was said:

"We rest our conclusion of his contributory negligence mainly on the reckless conduct of the plaintiff in driving over the 360 feet at the east end of the unfinished road. Even if the defendants were negligent in not placing signs there, the plaintiff was grossly negligent in driving over that part of the road at the speed mentioned. The piles of dirt here and there on the unfinished grade were sufficient warning to arrest the attention of any reasonably prudent person that the road was not intended for public travel and that he was going at his own risk. . . . The piles of dirt over which plaintiff drove were an effective warning to him that he had reached the end of the road and that he should take precautions for his own safety, but instead of doing so he recklessly drove on and the accident resulted. If he had taken reasonable precautions for his own safety the accident would have been averted. Upon his own testimony and evidence not in dispute, the plaintiff was guilty of negligence as a matter of law." (p. 471.)

Appellee relies principally upon four cases, *Lincoln Township v. Koenig,* 10 Kan. App. 504; *Neiswender v. Shawnee County Comm'rs,* 151 Kan. 574, 101 P. 2d 226; *Brock v. State Highway Comm.,* 157 Kan. 252, 139 P. 2d 811; and *Thummel v. State Highway Comm.,* 160 Kan. 532, 164 P. 2d 72.

In *Lincoln Township v. Koenig,* supra, we hark back to an earlier day. The case involved personal injuries resulting from a collision between two wagons which were going in the same direction. The alleged negligence of the defendant township consisted in permitting the roadway where the injury occurred to remain in an unsafe condition in that it was only 12 feet wide and was between ditches from three to four feet wide and from one and one-half to two and one-half feet deep. Plaintiff's wagon was nearing the narrowest part of the roadway when the defendant's team became frightened, got out of control, dashed down the hill, and the driver tried to pass plaintiff's wagon but couldn't do so on account of the ditch, and the col-

lision occurred, causing the injuries complained of. The principal question of fact presented was whether a highway with conditions as alleged constituted a defective highway within the meaning of the statute which makes counties and townships liable. The trial court was upheld in submitting that question to the jury and this court said that the general verdict showed that the jury regarded the highway as defective and as the proximate cause of the injury.

In *Neiswender v. Shawnee County Comm'rs,* supra, plaintiff's husband was drowned when his car broke through the railing of a county bridge and he fell into the river, after being sideswiped by a car on the bridge. In that case there was much evidence that the railing was in a wholly unsafe condition and that its condition was known to the defendant. It was held that the condition of the railing was such that accidents caused by its condition should reasonably have been anticipated by those responsible for maintaining the bridge and that the collision and the condition of the railing were both directly related in causing the accident. The trial court had granted a new trial having concluded that an instruction given was erroneous in that it failed to recognize that two or more events may combine to produce a result and together constitute the proximate cause. It may be noted that after the two cars sideswiped each other, plaintiff's car ran into the rotten and frail railing which gave way, the collapse of which thus became the immediate cause of the accident. In the instant case, the alleged condition of the highway was something preceding the collision, and the collision was thus the immediate occasion of plaintiff's injury. But without laboring that distinction, the cases differ very materially in that in the Neiswender case there was nothing whatever to warn the plaintiff of the defective railing when he drove upon the bridge. He had a right to assume that the railings were substantially built for the purpose intended, and he had no reason to think otherwise. That is not the situation here. Before the accident took place the plaintiff had driven for one-half mile over a road the condition of which was obvious and which he alleges was impassable, dangerous and hazardous.

*Brock v. State Highway Comm.,* supra, was a case in some respects much like the one before us. Plaintiffs were injured when their car collided head on with another car at a point near the top of a hill. Action was against the highway commission and the appeal was from an order overruling defendant's demurrer to the peti-

tion. The principal question presented was whether the condition of the highway as alleged constituted a defect under the statute making the commission liable. In a four-to-three decision this court held that the petition was good as against demurrer. Summarizing the pertinent facts the plaintiffs alleged that the collision took place "near the peak of a hill"; that each car was traveling at a reasonable rate of speed, that is, thirty miles an hour; that each car was driving on its own side of the road; that at the point where the collision occurred, the highway which was of sand and gravel had ditches on each side two to three feet deep; that beyond these ditches there were graveled banks four to six feet high; that at or near the peak of the hill where the accident occurred the drivers of approaching vehicles were prevented from seeing each other beyond a distance of 125 feet; that at or near the peak of the hill the defendant had caused to be placed a ridge of dark muddy colored sand, the same color and appearance as the remaining portion of the highway; that said ridge was from two and a half to three feet wide at the base and from one to three feet in height; that in addition to the ridge the defendant had caused to be placed a pile of sand from two to three feet wide and from ten inches to three feet high extending into the highway four to six feet from the ridge leaving eleven feet open for travel; that the condition of the highway as it existed at the peak of the hill, and more particularly the obstruction there, could not be seen by travelers whether they were approaching the hill from the east or the west; that due to the slope and grade of the hill the drivers of the two cars had no opportunity to stop their cars or to turn to one side or to take any other precautions for their safety due to the fact that the dangerous conditions there existing were not open to view and could not be seen by either driver. We think the case is readily distinguishable from the one before us. There is here no allegation as to the range of vision of the drivers as they approached "the crest of a hill," and no allegation that there was any defect in the highway which could not be seen or any obstruction which was obscured to the view of the drivers. Also it may be noted there was no allegation as to the speed of the approaching car or as to the speed of plaintiff's car prior to the time he stopped upon the highway, although defendants in their motion to make definite and certain asked that such speeds be set out.

*Thummel v. State Highway Comm.,* supra, involved a bad high-

way accident in which several young people lost their lives. Again by a four-to-three decision this court held the trial court properly overruled the defendant's demurrer to the plaintiff's evidence. The many facts more or less pertinent to the issue involved need not be recited in full. Some weeks before the fatal accident occurred, there had been a destructive flood in the vicinity which had done a lot of highway damage. Barricades had been erected at the extreme ends of the highway along which some of this damage had taken place but at a point between these extreme ends where the highway was crossed by a township road, no barricade had been erected at the south side of the intersection. At the point where the car in question entered the highway from the south, the highway appeared to be a good wide graded road with two definite lanes of travel available. A principal point decided in the case was that a state highway may be considered as having been "opened" by implication when the conditions are such as to indicate to an ordinarily prudent person that it is available for public use and is a safe place to travel. Having entered the highway where such conditions existed according to plaintiff's evidence, and where it could be said that the highway had by implication been opened to public travel, there being no signs to indicate otherwise, the car proceeded for some distance when it came suddenly upon a barricade extending only part way across the highway so that it was possible to drive around it without driving off the shoulder of the highway. This was at about 10:30 at night. The road was so similar in color to the barricade that a motorist might not have seen the barricade in time to stop in the ordinary course of travel. One witness testified that she could not see it when she looked at it the next evening, although she knew it was there, until she was within fifteen feet of it. The car ran past the side of the barricade and into a washout eight or ten feet deep, and all the occupants were drowned. Without further discussion, it must be obvious that the facts in the Thummel case are quite different from the ones here alleged. In the Thummel case the car went upon a highway which gave no indication of being hazardous but which presented, by its condition, an open invitation to public travel and there was evidence from which a jury could say that there was nothing—particularly in the nighttime—which would constitute a warning to ordinarily prudent persons until they suddenly approached the partial barricade.

We find nothing in any of the above cases inconsistent with the

conclusion which we are impelled to reach that the plaintiff here did not state a cause of action against the construction company. It cannot be said, in the first place, that the absence of warning signs was the cause of the collision. The principal purpose of such signs is to give notice to drivers of a dangerous condition requiring precaution. It is evident from his allegations that the plaintiff saw the condition of the highway when he entered it. Warning signs would not have supplied information that he did not already have. He alleges that the highway was "impassable," "dangerous" and "hazardous" where he entered it and he voluntarily proceeded to travel over that sort of highway. He does not state how far away he could see an approaching car before he approached the point where the collision took place, nor that there was any obstruction which obscured his view. He alleges in effect that when he first saw the car, it was fifteen feet away. At that distance it could not have been over the crest of the hill and out of sight. By their motion, the defendants sought to have the plaintiff say how fast the approaching car was traveling when it struck his car and how fast he had been traveling prior to the time he first saw the car fifteen feet away and stopped his own car on the right-hand side of the road. Also, precisely how wide the traveled portion of the highway was where the accident occurred. In successfully resisting the motion, plaintiff declined to supply this pertinent information. It is evident, however, from the allegations as to the injuries suffered, that the approaching car must have been traveling at a rather high rate of speed over a highway which plaintiff alleges was "impassable, dangerous and hazardous." We think that under the allegations the defendants' alleged acts of negligence were not the proximate cause of the collision and that when the plaintiff, knowing the hazardous condition of the highway, proceeded upon it, he did so at his own risk, and was clearly guilty of negligence barring recovery.

The judgment is reversed with direction to sustain defendants' demurrer to the petition.