No. 37,910

Connie Hukle, *Appellant*, v. Carl R. Kimble and Joyce W. Minson, a Partnership, doing business as M & K Truck Line; Carl R. Kimble; Joyce W. Minson and Home Mutual Insurance Company of Iowa, *Appellees*.

(219 P. 2d 434)

Opinion filed June 10, 1950.

*Clarence N. Holeman,* of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson* and *Keith L. Wallis,* all of Wichita, were with him on the briefs for the appellant.

*J. B. Patterson,* of Wichita, argued the cause, and *A. W. Hershberger, Richard Jones, William P. Thompson* and *H. E. Jones,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Smith, J.: This was an action to recover damages for injuries alleged to have been sustained when plaintiff was caught between a truck driven by one of the defendants and a pillar in the driveway of an elevator where plaintiff was working. The trial court sustained defendant's demurrer to plaintiff's evidence. He has appealed.

The petition alleged first the residence of the parties; that Minson and Kimble were holders of a common-carrier permit and as a prerequisite to the issuance of this permit the state corporation commission required a liability policy of insurance to be filed with the commission; that Minson and Kimble did obtain such policy from defendant insurance company and filed it with the commission; that this policy provided the company would pay any damages incurred as a result of the negligent operation of a certain 1944 Chevrolet truck; that Kimble and Minson were operating as a partnership under the name of M & K Truck Line on November 30, 1946. The petition then alleged that on November 30, 1946, plaintiff was em-

ployed by the Mulvane Coöperative Union and was performing the duties of his employment when defendant Kimble drove his truck into the elevator and against plaintiff in a negligent manner and crushed plaintiff against a cement pillar; that Kimble was guilty of negligence, in operating the truck with insufficient lights, in failing to keep a lookout, in operating the truck with faulty brakes, in operating the truck so that he could not stop when he saw or could have seen plaintiff, in failing to allow sufficient clearance between the truck and the cement pillar, in driving at an excessive rate of speed, in driving into the elevator before he was authorized to do so, in operating the truck of a width in excess of that allowed by law, in failing to stop immediately when he saw or should have seen plaintiff, in running into plaintiff and crushing him against the pillar; that one or more of these acts of negligence were the proximate cause of plaintiff's injuries; that Kimble was operating the truck for himself and Minson, his partner, and the defendant insurance company was liable under its policy. The petition then alleged plaintiff's injuries. The prayer was for damages in the amount of $31,055.76.

The defendants filed a joint answer in which they denied all facts not admitted; they admitted the residence of the parties and the issuance of the policy; they denied specifically that at the time of the damages the truck was being operated pursuant to a common carrier permit; that Kimble and Minson were operating as a partnership; and that on November 30, 1946, Kimble was operating the truck on behalf of Minson.

The answer also alleged that plaintiff was guilty of contributory negligence in walking into the path of the truck, in failing to keep a proper lookout, in entering the truck passageway through the elevator when he knew or should have known the truck was passing through the passageway, in failing to give warning to other users of the passageway of his intention to enter it.

The reply was a general denial.

The plaintiff testified about being crushed between the truck and a cement pillar in the driveway of the elevator; that the truck was being driven by defendant Kimble. A statement about some of the physical facts will be made now. What is referred to as the driveway of the elevator ran north and south and has a door at each end. It was the custom for patrons of the elevator, who had grain to sell, to enter the driveway with their trucks or teams and wagons

at the south door and to drive to a point about forty feet from the south door, a little more than halfway through the driveway, where there was a dump, at which the load of grain was dumped into bins of the elevator company; and then to drive out the north door. About every six or eight feet there were pillars that extended about eight inches into it on each side of the driveway; the distance between the pillars on each side was not more than nine feet, four inches; the truck bed was eight feet wide; the driveway was about sixty feet from north to south, so it was about twenty feet from the dump to the north door; opposite the dump and through the east wall of the driveway there was a doorway about five feet wide, which opened into a feed room; on the morning in question when the truck first arrived at the elevator both the north and south doors were closed; when plaintiff first saw the truck he was in the office, Kimble was talking to the manager of the elevator and the truck loaded with corn was facing south; the lights in the driveway were not on; plaintiff opened the south door and it was fairly dark inside; he had seen the truck on the scales while he was in the office; in order for it to enter the driveway it was necessary that it make a complete turn and come in the south door. He testified that it was not necessary for the north door to be open to dump the grain, but it was necessary that it be opened for the truck to leave after having dumped. After he opened the south door he went to the dump and swept some grain into it. He then went to the door into the feed room, which has been mentioned heretofore; he reached through it and turned on a compressor; to do this he reached around the door and did not leave the driveway; from there he started toward the north door to open it; the last time he saw the truck it was making a turn to come in the south door; he did not see it come in; he knew the width of the driveway and the width of most trucks; after he saw the truck about to come in the south door he started to the north door. He testified he had taken about three steps from the feed room door when the truck caught him between the truck bed and the pillar that was right by the door. At another point in his testimony he said he felt the fender on his leg and the next thing he knew the truck had hit him. He testified that the truck driver said immediately afterward "I didn't see him, I was watching this other side." He also testified there was a custom of signaling trucks when the elevator people were ready for them to come into the driveway; that at the time the truck entered he was not ready for Kimble to come in and he did not give him the signal to come in; that the

custom was to wave truck drivers in when ready; that Mr. Kimble had been on the premises before, plaintiff did not know how many times; plaintiff had worked for the elevator company for about four years; his duties consisted of waiting on customers, weighing, loading and unloading grain, running the elevator, and doing everything that might come up.

The manager of the elevator testified he did not hear Mr. Kimble sound any horn or give any signal when he was coming into the driveway; the north door of the elevator was shut, and lights from the truck would probably have shown against the door had there been any headlights. He testified "We had a custom in the elevator of telling our customers when they should enter the driveway. The customary signal was 'come on in' and the man who gave this signal was the man who was set up at the elevator. Mr. Kimble had been on the premises prior to the time of this accident . . ."

In answer to a direct question, he testified the lights of the truck were not on when Kimble drove into the elevator. A copy of the insurance policy was introduced. It gave the name of the insured as Joyce W. Minson and Carl R. Kimble, doing business as M. K. Truck Line; that their occupation was trucking; that the insured was a partnership and that the certificate had been transferred from a former holder to defendants Minson and Kimble by order of the corporation commission.

The defendant demurred to this evidence for the reason that it failed to show facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendants and for the further reason that it appeared from the evidence plaintiff was guilty of contributory negligence, which would be a bar to recovery.

This demurrer was sustained—hence this appeal.

Defendants' first argument is that the evidence did not show Kimble to be guilty of any negligence. They concede that on a demurrer to the evidence we must draw all inferences from it favorable to the plaintiff and disregard all contradictory and unfavorable evidence.

Undoubtedly such is the rule. (See *Gilmore v. Kansas City*, 157 Kan. 552, 142 P. 2d 699, and *Smith v. Kansas City*, 158 Kan. 213, 146 P. 2d 660.)

Defendants concede also that Kimble owed the duty to plaintiff to exercise reasonable care under the circumstances since both parties were lawfully on the premises.

Plaintiff on this appeal argues that of the ten specific allegations

of negligence of defendant he proved four, that is, operating the truck with insufficient and improper lights, failure to keep a proper lookout for others lawfully on the premises, failure to allow·sufficient clearance between his truck and the cement pillar, and driving into the elevator before he was authorized to do so.

Defendant argues first that there was no evidence the truck was equipped with insufficient or improper lights. The charge does not relate to the lights with which the truck was equipped. The charge is operating the truck with insufficient or improper lights. There is direct testimony that the lights on the truck were not turned on. Operating a truck without the lights turned on when they should have been would be covered by a charge of operating a truck with insufficient lights. Defendants depend on the rule that Kimble was under a duty to observe reasonable care only under all the surrounding circumstances and stated there was no evidence the existing circumstances created any need for lights. The plaintiff testified, however, that after he opened the south door the lights in the elevator were not on and it was fairly dark in the driveway. A reasonable inference to be drawn therefrom is that Kimble drove his truck into a fairly dark driveway without turning on the lights of the truck. It is true plaintiff testified he thought it would have been possible for a man driving a truck into the elevator to see a person walking ahead of him at the time he got right in the door. The fact remains, as testified to, that had the lights of the truck been burning they would have shown against the north door and would have served as a warning to plaintiff of the approach of the truck, or at least that it was in the driveway. Where ordinary reasonable men might differ as to whether Kimble failed to exercise due care when he drove into the driveway the question was for the jury. (See *Hill v. Southern Stage Lines Co.,* 143 Kan. 44, 53 P. 2d 923; and *Bergman v. Kansas City Pub. Ser. Co.,* 144 Kan. 27, 58 P. 2d 110.) Certainly reasonable men might well differ on that question under these surrounding facts and circumstances. We cannot hold as a matter of law that Kimble was not negligent in not turning on the lights of his truck before he drove in.

Defendants also argue there was no evidence at all in the record that defendant Kimble failed to keep a proper lookout for others on the premises.

In this connection defendants describe plaintiff's movements just before he was hit and state the record shows plaintiff was not in the

portion of the driveway in front of. Kimble at any time after he quit sweeping grain. As a matter of fact, the evidence is clear that the driveway was very little wider than the truck and plaintiff was never out of the driveway at any time after he opened the south door. While it is true that plaintiff was hit while he was at the side of the driveway rather than directly in front of the truck, the fact remains he was never more than a half a foot from the direct path of the truck. To say plaintiff was not in front of the truck at any time is taking too narrow a view of the oral evidence and the physical facts.

There is testimony by the plaintiff that defendant Kimble said immediately after hitting plaintiff: "I did not see him, I was watching this other side." Defendant asks us to say that as a matter of law defendant Kimble owed no duty to plaintiff to look out for both sides of the driveway. We cannot do that. Ordinary reasonable minds might well differ on the question of whether Kimble exercised due care under all the surrounding facts and circumstances.

Defendants next argue there is no evidence in the record that Kimble drove into the elevator before he was authorized to do so. In this connection defendants argue that plaintiff could have opened the north door before he opened the south door and that the south door standing open constituted an invitation for Kimble to enter.

There is testimony of the plaintiff that it was the custom to signal drivers when the elevator people were ready for them to drive in and that he did not signal Mr. Kimble. There was testimony of the manager to the same effect. Defendants argue there was no evidence tending to prove that Kimble knew of any such custom. There was testimony of the plaintiff and the manager of the elevator both that Kimble had been on the premises, furthermore he was a truck driver. On consideration of a demurrer to the evidence we hold this all made the question of whether Kimble drove into the driveway before he was authorized to do so a matter for the jury.

On the question of contributory negligence, defendants recite the movements of plaintiff from the time he opened the south door until he was hit. They say the concrete pillars made a shield for his body and argue that had he stayed behind one of them he would have been safe but that he stepped out from behind a pillar directly into the path of the truck. In this connection it must be noted that plaintiff was facing north, away from the direction of the oncoming truck when he was hit.

On the question of whether a plaintiff was guilty of contributory negligence so as to bar his recovery, on the consideration of a demurrer to the plaintiff's evidence, we said, in *Sponable v. Thomas,* 139 Kan. 710, 33 P. 2d 721:

"In determining whether as a matter of law a plaintiff is guilty of contributory negligence which precludes his recovery for injuries sustained, all of the testimony favorable to the plaintiff must be accepted as true, and if the facts are such that reasonable minds reach different conclusions thereon, the question must be submitted to the jury and cannot be determined by the court as a matter of law."

The rule is so well settled as to not require citation of further authorities.

Defendants argue the evidence is such that ordinary reasonable minds could not reach any other conclusion than that plaintiff failed to exercise due care for his own safety.

We think it too strict an interpretation of the plaintiff's evidence. We have demonstrated that it was a question for the jury whether Kimble failed to exercise due care when he drove into the driveway without turning on his lights and before he had been given the signal to do so. Such being the case, it is a jury question whether plaintiff had a right to rely on Kimble not coming in without his lights turned on and before he was given the signal to. Furthermore, we have demonstrated it was a question for the jury whether Kimble kept the proper lookout, hence it is a jury question whether plaintiff had a right to rely on Kimble keeping a proper lookout. Plaintiff was going about his duties in walking toward the north door to open it. In view of all the surrounding facts and circumstances, we cannot hold plaintiff was guilty of contributory negligence as a matter of law.

It follows that the defendant's demurrer should have been overruled.

The judgment of the trial court is reversed, with directions to proceed to try the action, in accordance with the views expressed herein.