No. 38,304

Oscar E. Mehl and George E. Mehl, doing business as Mehl Bros. Sheet Metal Works, *Appellants*, v. Orvil A. Carter, doing business as Carter Auto and Electric Supply, *Appellee.*

(237 P. 2d 240.)

Opinion filed November 10, 1951.

*Harold J. Toner,* of Kansas City, Mo., and *John F. O'Brien,* of Independence, argued the cause, and *Dallas W. Knapp* and *Charles D. Knapp,* both of Coffeyville, and *O. L. O'Brien,* of Independence, were with him on the briefs for the appellants.

*Jay W. Scovel,* of Independence, and *A. R. Lamb,* of Coffeyville, argued the cause, and *Clement A. Reed,* of Coffeyville, was with them on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: Plaintiffs appeal from an adverse judgment rendered against them in an action to recover damages to real property, and the contents thereof, caused by fire which started in a building owned by the defendant.

The plaintiffs, Oscar E. Mehl and George E. Mehl, operated a sheet metal works in the city of Coffeyville and the defendant, Orvil A. Carter, operated an auto and electric supply business in an adjoining building to the north.

This is the second chapter of this litigation. (*Mehl v. Carter*, 168 Kan. 342, 212 P. 2d 227.) On the former appeal it was held the insurance companies which had insured loss on appellants' building and contents were the real parties in interest to the extent of their payments of loss. The petition was thereafter amended in harmony with that decision in order to disclose the respective interests of the insurance companies and appellants in the recovery sought.

The first question is whether the defendant-appellee is liable in damages in any amount. In order to properly appraise appellants' contentions on appeal it is important to examine the principal issues joined by the pleadings. Briefly stated appellants, in substance, alleged:

Appellee's agents, servants and employees were guilty of negligence in maintaining gasoline on the premises in violation of certain city ordinances which prohibited the keeping or storage of gasoline in quantities exceeding five gallons unless stored in underground tanks and which provided that all inflammable liquids not so stored should be kept in tight and entirely closed metal cans and painted red and that inflammable liquids should not be handled in the presence of an open flame or fire and that no open flame, heating or lighting device should be used in any room where gasoline or other volatile inflammatory fluids were stored or handled; that appellee's agents and employees should have known that handling of gasoline in open containers in the presence of an open flame or fire would cause the gasoline to become ignited; appellee's servants and agents negligently and carelessly suffered and permitted gasoline to be spilled and to escape from a container and that by reason of such negligence it became ignited and that such negligence caused the fire and resultant damage.

These allegations of negligence appellee denied and upon the

issues thus joined the action was tried. Appellants' evidence, in substance, disclosed:

The workroom of appellee in which the fire occurred and from which it spread to appellants' building was approximately 100 feet long and twenty-five feet wide; towards the rear and three or four feet from the south wall appellee maintained two workbenches approximately three feet wide and eight feet long; on an extension to the east bench appellee had placed an open container with gasoline for the purpose of washing automobile parts; the container was located on a shelf extending out from the side of the bench with a molding around it; the bottom of the container was ten to twelve inches across and eight inches high; if filled it would hold a gallon or two; about eight or ten feet from this container appellee had a circulating gas heater on the floor which was enclosed except for small openings which were necessary to admit oxygen without which the stove could not operate; Gene Woods, the only employee of appellee who was working in the room at the time, was at or near the east workbench; Harry Boothby drove his wife's car into appellee's place of business to have the windshield wiper fixed; with him was one of his employees, Kenneth Kinsley; they went to the east workbench where Gene Woods was employed; while there Pat Walterschied came into the building through a rear door and joined the group at the east bench; Boothby was singing a song and Walterschied came in and "fooled with" him as he was singing; some scuffling ensued; some of appellants' evidence disclosed Woods participated in the scuffling and other portions of their evidence tended to indicate he did not but was merely listening to the song; the gasoline container was knocked off the bench, the gasoline ran under the stove and ignited, resulting in the fire; some of appellants' evidence disclosed uncertainty concerning who knocked the can off the bench; other testimony of appellants disclosed it was not knocked off the back of the bench by Gene Woods, appellee's employee, but by Walterschied who had gone behind the workbench; the gasoline spilled on Walterschied's trousers and they were burned.

Touching the question of Gene Woods' participation in the scuffling Boothby, appellants' witness testified:

"Q. Was Mr. Gene Woods there with you?

"A. Yes, sir; he was listening.

"Q. If there was any horse play, was Gene Woods in it?

"A. No sir; he was standing there listening to it; I was singing a song."

Appellants' evidence also disclosed: A fire inspector from the Coffeyville fire department had been in appellee's place of business some six weeks prior to the instant fire to have his car repaired; while there he observed an open container on a shelf attached to the suuth side (back side) of the east workbench; upon inquiry to Gene Woods he was informed Woods used gasoline in the container to clean parts; he informed Woods an open container of gasoline used near an open flame was dangerous; that gasoline fumes or vapors from an open container could become ignited and might burn the place sometime.

Appellee's demurrer to appellants' evidence was overruled. Appellee introduced the evidence of his only employee, Gene Woods. Insofar as material Gene Woods' testimony was, in substance, as follows:

His workbench was the east one; he had gasoline on the shelf for the purpose of cleaning parts; the container was "half of a five-gallon can" which had been cut down; the gasoline container was not bolted down; it was located on a shelf extending out from the side of that bench with a molding around it so that it would not slip off; a similar container was on the west workbench; there could not have been over a quart of gasoline in each of the containers; the gasoline can was to the back and in front of the stove but empty; it had been steamed out the day before and it was painted red; there was no other gasoline in the building; at the time of the fire he had his hands on a vise at the west end of the bench; at no time before the fire was he close enough to the can of gasoline on the bench to have knocked it over; Pat Walterschied had come over for the purpose of going for some coffee; Boothby was singing a song in which he kidded him, Woods, about being in school; he had just attended a carburetor school at St. Louis; just before the fire he and Walterschied were getting ready to go and get coffee.

Appellants' motion for a directed verdict was overruled. A general verdict was rendered in favor of appellee.

The jury made the following findings of fact:

"1. Q. Did defendant use or cause to be used on said premises on said date, an open flame or heating device in any room where gasoline was stored or handled? A. No.

"2. Q. Was the defendant negligent in his use of gasoline, at said time and place? A. No.

"3. Q. Do you find and believe from the evidence that the defendant kept, or that his servants, agents or employees kept gasoline in an open container in the defendant's place of business on February 5, 1948? A. Yes.

"4. Q. If you answer question No. 3 in the affirmative do you find and believe from the evidence that on said date and at the same time that gasoline was kept in open containers, a stove was burning in defendant's place of business? A. Yes.

"5. Q. In the event you answer question No. 3 in the affirmative state how far the closest pan of gasoline was from the fire? A. Nine feet.

"6. Q. Would the injury to the Mehl property have occurred unless the defendant kept gasoline in an open container in close proximity to a gas stove? A. No.

"7. Q. Do you find that upsetting the can containing gasoline was the proximate cause of the fire? A. Yes.

"8. Q. If you answer question No. 7 in the negative then state what you find was the proximate cause of the fire? A. (No answer.)

"9. Q. Do you find that an employee of the defendant upset the can containing gasoline? A. No.

"10. Q. If you answer question No. 9 in the affirmative state the name of the employee that you find upset the can containing gasoline? A. (No answer.)"

Appellants assert the trial court erred in overruling their motion to strike findings 1, 2 and 7 on the ground they were contrary to the undisputed evidence and that no evidence was adduced to sustain them. A studious examination of the record will not permit us to sustain this motion. Although the testimony did not describe a circulating heater in detail it tended to show the flame in such a stove is enclosed but that the stove does contain some openings for the supply of oxygen in order to make it burn. Such stoves, of course, are in rather common usage and the jury was probably familiar with their general construction. In any event we think we would not be justified in concluding as a matter of law that a circulating heater constituted an open flame within the contemplated meaning of the city ordinance. We find no evidence that such a stove is regarded by fire inspection authorities as constituting an open flame. The jury found it was not an open flame or heating device. In appellants' brief we find no objection to the instruction given on the subject of the ordinance respecting an open flame or heating device. Under the circumstances we think the jury was justified in making finding 2. In view of the pleading and the evidence the jury was justified in finding the proximate cause of the fire in this particular case was not the mere presence of an open container of gasoline but the upsetting of the gasoline and that it was not upset by appellee's employee.

Appellants argue question 7 should not have been submitted for the reason the question of proximate cause was one of law. The

question of negligence, including proximate cause, is ordinarily one for the jury. (*Jones v. Kansas Public Service Co.,* 158 Kan. 367, 147 P. 2d 723; *Rowell v. City of Wichita,* 162 Kan. 294, 301, 176 P. 2d 590; *Atherton v. Goodwin,* 163 Kan. 22, 180 P. 2d 296.)

We think a fair interpretation of appellants' amended petition is that they relied on the spilling of the gasoline and not its mere presence in the building as constituting the proximate cause of the fire. But we shall nevertheless later treat appellants' contention concerning negligence in merely keeping gasoline in an open container.

The trial court properly overruled the motion to strike the challenged findings.

Appellants further contend the court should have sustained their motion for judgment *non obstante veredicto.* For the purpose of obtaining a ruling on such a motion the motion concedes the findings are supported by evidence. (*Haney v. Canfield,* 152 Kan. 597, 600, 106 P. 2d 662; *Sayeg v. Kansas Gas & Electric Co.,* 156 Kan. 65, 66, 131 P. 2d 648.) In order to sustain such a motion it is not sufficient that there be some inconsistencies between the findings but they must be so contrary to the general verdict as to clearly compel the court to overthrow the verdict and to render a contrary judgment as a matter of law. (*Taggart v. Yellow Cab Co. of Wichita,* 156 Kan. 88, 94, 131 P. 2d 924; *Jelf v. Cottonwood Falls Gas Co.,* 162 Kan. 713, 716, 178 P. 2d 992.)

Appellants call attention to finding 6. Of course, that finding is true. It does not follow, however, as a matter of law that the mere presence of the open can of gasoline constituted the proximate cause of the fire. The jury expressly found it did not. It expressly found the proximate cause of the fire was not the presence of the gasoline but the spilling of it and that appellee's employee did not spill it. Findings must always be considered as a whole and harmonized with each other and the general verdict if reasonably possible to do so. Here we have no trouble in so harmonizing them.

Appellants' counsel persistently argue the proximate cause of this fire was appellee's negligence in leaving the open unfastened can of gasoline on the bench. The jury found otherwise and we have previously indicated its findings cannot be disturbed. Appellants, however, contend they were entitled to have their motion for a directed verdict sustained on the theory the keeping of the open can of gasoline was the proximate cause of the fire. In order to sustain that contention we would be obliged to do so purely

as a matter of law. Manifestly that cannot be done under the facts of this case. Undoubtedly gasoline is a dangerous and inflammable commodity and should be handled with commensurate care. In this case even though it be conceded to be dangerous to keep an open container of gasoline in a workshop, with or without an open flame, there was no evidence the fumes or vapors from the can of gasoline, while located on the workbench, entered the stove and were ignited. If the evidence even tended to show the fire was caused in that manner we woud have an entirely different case for review. Liability cannot be predicated on the basis of what possibly might have happened but must be determined on the basis of what actually occurred.

Of course, a person cannot without liability create a condition which, in the exercise of reasonable care, should cause him to realize an injury is probable or likely to occur but a person is not liable for a consequence which is merely possible but not likely to occur. Stated in another way, one is bound to anticipate and provide against what usually happens or is likely to happen but it would impose too heavy a burden to be held responsible for guarding against what is unusual or unlikely to happen and what has been said to be only remotely or slightly probable. (*Thummel v. State Highway Comm.*, 160 Kan. 532, 541-542, 164 P. 2d 72; *Rowell v. City of Wichita*, 162 Kan. 294, 301-303, 176 P. 2d 590; *Atherton v. Goodwin*, 163 Kan. 22, 26, 180 P. 2d 296.) Whether appellee was negligent in that respect was a jury question. The jury resolved that inquiry in appellee's favor. Had appellee's employee knocked the can off the bench in the course of his duties a different question woud be presented with respect to what appellee reasonably should have anticipated. But that is not this lawsuit. We think we would not be justified in concluding *as a matter of law* that appellee, in the exercise of reasonable care, should have anticipated the danger of some outsider going behind a workbench and there disturbing tools or equipment located at the rear of such a bench. Surely appellee was not obliged, *as a matter of law*, to anticipate a scuffle by outsiders would be probable or was likely to occur at such a place. There was not the slightest evidence of such or similar previous occurrences and no logical or reasonable basis for appellee or his employee anticipating such conduct on this occasion.

In the Rowell case, *supra,* it was held:

"Natural and probable consequences are those which human foresight can anticipate because they happen so frequently they may be expected to recur." (Syl. ¶ 8.)

The Rowell case strongly relied on by appellants is not controlling under the facts of the instant case. That case involved a demurrer to a petition. The petition contained ample allegations disclosing defendants long had knowledge of the danger of permitting beverage bottles to become vagrant and unconfined in the stadium to the extent they created a dangerous public nuisance which resulted in the injury and damage to the plaintiff. Here we are concerned with evidence and specific findings of a jury exculpating appellee of negligence.

We now reach appellants' complaint concerning (1) the instructions given and (2) the refusal to give certain requested instructions. Neither the record nor the brief of appellants discloses the specific nature of the objections made at the time of the trial or on the motion for a new trial to instructions given, if any specific objections were called to the court's attention. Appellants merely assert they objected to the instructions given and requested certain instructions. Under these circumstances we, of course, can ascertain the nature of the objections to the instructions given only by making a comparison with the instructions requested. This we have done. It will serve no useful purpose to restate the principles of law applicable under the issues joined by the pleadings and the evidence · adduced and, for emphasis, we probably also should say—in view of the absence of evidence. Upon the basis of the record before us we discern no reversible error in the instructions given or in refusing the requested instructions.

Appellants contend this case involved recovery of money by an insurance company and that this fact may have had some influence on the jury. It is observed appellants do not say such fact actually influenced the jury. They merely say it may have done so. But we are nevertheless at a loss to understand that contention. Notwithstanding our former opinion in the first chapter of this litigation (*Mehl v. Carter*, 168 Kan. 342, 212 P. 2d 227) in which we held an insurance company is the real party in interest to the extent of its payment of loss, the trial court, after the petition was amended in conformity with our opinion, denied appellee the right to cross-examine on the subject of payment of loss and refused to permit the subject of insurance to be mentioned in any manner. Appellee has not cross-appealed from that ruling and the question whether

his rights were prejudiced thereby is not before us. Surely, however, appellants cannot contend they were prejudicially affected by the ruling which prevented a disclosure of the fact an insurance company was interested in a recovery in this action.

The judgment is affirmed.