No. 39,418

JAMES GREEN, *Appellant*, v. THOMAS HIGBEE, *Appellee*.

(272 P. 2d 1084)

Opinion filed July 6, 1954.

*William Hergenreter,* of Topeka, argued the cause, and *Wendell L. Garling-house, Warren W. Shaw,* and *Fred Carman,* all of Topeka, were with him on the briefs for the appellant.

*James D. Waugh,* of Topeka, argued the cause, and *James A. McClure, Robert L. Webb, Ralph W. Oman, Philip E. Buzick,* and *Robert A. McClure,* all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: The plaintiff appeals from an order sustaining a demurrer to his evidence in an action involving a collision of motor vehicles in a rural intersection.

The only material testimony was that of appellant. It, in substance, was:

The collision occurred on the morning of October 8, 1951; he was driving a 1950 Ford one ton truck; the day was clear and the road on which appellant was driving was dry and in good condition; he approached the intersection on a county road from the east; appellee approached the intersection on a township road from the south; both roads were fifty feet wide from fence line to fence line; there were no stop signs on any side of the intersection; there were road signs both east and west of the intersection indicating that the county road continued or turned to the north towards Berryton; both parties were thoroughly familiar with the blind intersection, having previously approached it from all directions; the east and west road carries the heavier traffic; there are wide curves to the north of the intersection on both the east and west sides thereof but not to the south; the east and west road is a gravel road; the township road to the south of the intersection is a rock or gravel road; there is a slight rise towards the intersection from both the east and south; the southeast corner of the intersection is a blind corner due to a hill or knoll to the southeast and to grass and weeds which were higher that year by reason of the heavy rains; the township road was depressed below the surface of the surrounding terrain which, with all other facts, combined to make that a blind corner; a ravine crosses the east and west road at a point approximately 400 to 500 feet east of the intersection; at that point and at some other points a traveler approaching from the east *could see* to the south or township road and at other points he could not; the distance across there would be approximately a fourth of a mile or perhaps sixty rods; the same would be true concerning a traveler on the township road south of the intersection who was looking towards the northeast; for a short distance nearer to the intersection the southeast corner was entirely blind to both drivers; a car coming from the south passes out of sight behind the bank.

Appellant's testimony, in substance, further disclosed:

He looked to the north and to the south as he crossed the ravine and saw no cars; that point was 400 or 500 feet east of the intersection; he was then traveling at the rate of approximately fifty miles per hour; at that point he reduced his speed to between forty and forty-five miles per hour; the next time he looked was after he had entered or just as he was entering the intersection; he looked to the north; he looked to the south, he believed, just

the instant before he was struck; he first saw defendant's car after he was in or just as he was entering the intersection; he first saw defendant's car after he was partly or most of the way through the intersection; he saw the defendant's car for only a second; he stated it happened "Just like that"; he did not see defendant's car long enough to estimate its speed; he further stated, "Well, I would say I was in the intersection first"; he heard no horn or warning sign prior to the impact; he did not sound his horn prior to entering the intersection; he did not apply his brakes; he went right into the intersection at about forty or forty-five miles per hour; he could not stop at that speed in less than fifty to fifty-five feet; when he looked south at the intersection it was too late to stop; he stepped on the gas and tried to get clear; he supposed he turned the wheel somewhat, but just very slightly, if any.

Appellant's testimony, in substance, further disclosed:

Defendant's car struck the left rear wheel and left side of plaintiff's truck bed; the left wheels of his truck were north of the center of the east and west road; the front of his vehicle was west or just past the center of the intersection when it was struck; the left rear wheel of his truck was at about the center of the road, maybe a little to the west; the left side of the bed of his truck which was hit was directly above the left rear wheel; the impact pushed the back end of his truck north; his truck continued in a sideway position and came to a stop when it hit the ditch on the south side of the road about 100 feet west of the intersection; when it hit the ditch the rear end of his truck swung around leaving the truck facing the north after it came to rest; when defendant's car stopped it was facing north with its front end just north of the center of the east and west road.

Defendant demurred to plaintiff's evidence on the ground it did not establish a cause of action and showed plaintiff was guilty of contributory negligence. In sustaining the demurrer the district court concluded plaintiff's own evidence disclosed he, as well as the defendant, was guilty of negligence at the blind corner.

Numerous cases from this and other jurisdictions are cited by the parties in support of their respective views. It would add little, if anything, to the body of our law to review them all and we shall not do so. Appellant relies primarily on our decisions in *Lawrence v. Kansas Power & Light Co.*, 167 Kan. 45, 204 P. 2d 752; *Thompson v. Barnette*, 170 Kan. 384, 227 P. 2d 120; *Fry v. Cadle*, 171 Kan. 14,

229 P. 2d 724; and *Cain v. Steely,* 173 Kan. 866, 252 P. 2d 909. Whatever one's views may be concerning the correctness of the decisions in some of those cases it is readily apparent they cannot be controlling in the instant case. There are highly important facts which plainly differentiate them from the instant one.

In none of them did the plaintiff run into a known blind intersection at a speed which he could not possibly control within the intersection such as that admitted by appellant in this case. In each of them the plaintiff at least testified *he had maintained a continuous lookout* for approaching vehicles on other highways or streets *before attempting to enter the intersection.* In each of them plaintiff testified he reduced his speed to a low rate before entering. Their speed, prior to reducing it, already had been much lower than that at which appellant entered the intersection in the instant case. In all of them plaintiff at least testified he had entered well into the intersection first and also concerning circumstances which in his mind indicated exercise of caution. In three of them there also was some indication plaintiff exercised, or thought he exercised, some judgment, after having entered the intersection first, in determining whether he might safely proceed.

It should be, and probably is, unnecessary to narrate further the facts in those cases. Since appellant, however, insists those cases are controlling it may be well to state briefly the facts therein which were material on demurrer to plaintiff's evidence.

In *Lawrence v. Kansas Power & Light Co.,* supra, plaintiffs, passengers in a car, brought an action against a bus company to recover damages resulting from a collision at an intersection in the city of Topeka. There were no stop or caution signs at either street on which the parties entered the intersection. Neither street was a through street. The car in which plaintiffs were riding approached the intersection from the south. The driver was alerted by one of the passengers that a bus was approaching from the east. The driver said, "I see it." The car was then twenty-five feet south of the intersection and beyond the north side of a building located to the southeast of the intersection which previously had obstructed a view to the east. The parties in the car thought the bus was traveling about twenty-five miles per hour. At that time the bus was about 128 feet east of the intersection. The car was traveling about fifteen miles per hour. As it entered the intersection the driver of the car thought the bus was about ninety feet east of the intersection.

The driver of the car thought he had time to cross the street ahead of the bus and increased his speed not to exceed twenty miles per hour. The paved portion of each street was twenty-six and one half feet wide. The bus struck the rear part of the car which had not cleared the east and west street. In reversing the order of the district court, which had sustained defendant's demurrer to plaintiffs' evidence, this court repeated the rule that where reasonable minds might differ the question of negligence is one for the jury. It further pointed out the car had traveled about thirty feet, while the bus had traveled only about nine feet in the intersection, and that G. S. 1949, 8-550 (a), which gave the car first in the intersection the right of way, applied and therefore (b) of that statute, which provides when two vehicles enter an intersection at the same time from different highways the driver on the left shall yield the right of way to the driver on the right, did not apply.

In the Thompson case, *supra,* the collision occurred at an intersection of county roads. There were no road signs. Both parties were familiar with the intersection. Plaintiff, in substance, testified: He approached the intersection from the south and was bound in a northerly direction. The intersection was known as a "blind corner," particularly to the southeast by reason of an embankment on the east side of the north and south road. There were hedge trees on the south of the east and west road. Plaintiff was traveling fifteen or twenty miles per hour as he approached the intersection. He, however, slowed down, looked both ways and then moved into the intersection at a speed of only thirteen or fourteen miles per hour. After he had moved into the intersection he first saw defendant's car coming from the east "like a rocket." He then increased his speed to avoid the collision. Defendant's car ran into the right center of plaintiff's car. Defendant's demurrer to plaintiff's evidence was overruled. This court concluded that since plaintiff's car was well in the intersection while defendant's car was some distance east of the intersection, the question of plaintiff's negligence was one on which reasonable minds might differ and that the demurrer was properly overruled. The jury made findings of fact in that case but we need not pursue them as we are presently concerned only with a demurrer to evidence.

In the Fry case, *supra,* the collision occurred at an intersection of rural roads without warning signs. Plaintiff approached the intersection from the east. Defendant approached it from the north.

The view to the north and east of the intersection was obstructed by an embankment, hedge and weeds on the north of the east and west road. The hedge had been cut back sixty feet from the intersection. There were weeds from there to the intersection. Plaintiff had been traveling at thirty to forty miles per hour. When about 200 feet east he *reduced his speed to thirty miles per hour*. As he approached from the east *he continued to look to the north and south*. He testified he saw no cars until after he had entered the intersection. He first saw defendant's car when he was in the intersection and defendant's car was twenty-five feet north of it. Plaintiff applied his brakes and swerved his car to the south. Defendant's car struck plaintiff's car at a point on the west side of the center of the north and south road. The defendant frankly admitted he had not been looking, just didn't see plaintiff's car, and drove into it without reducing his speed. This court applied G. S. 1949, 8-550 (a) which gave plaintiff the right of way because he was in the intersection first. We held under the circumstances plaintiff was not guilty of contributory negligence as a matter of law.

It should not be necessary to analyze the facts in the case of *Cain v. Steely,* supra, but we shall do so briefly. Plaintiff's evidence, in substance, was: The collision occurred at an intersection of city streets. Plaintiff approached it from the south and defendant approached it from the west. There were no stop signs or traffic controls. Plaintiff saw defendant approaching, she checked the traffic in other directions and then again turned her attention to defendant's car. She continued to watch defendant's car. She estimated the speed of her car at fifteen to twenty miles per hour and that of defendant at twenty to twenty-five miles. She thought defendant was slowing down. When she reached the south curb line defendant was the width of a sidewalk west of the intersection. Plaintiff entered the intersection first but slowed down some more before she did so. Defendant's car struck her car on the left side near the rear panel. The collision occurred in the northeast quadrant of the intersection. The demurrer to plaintiff's evidence was overruled and we affirmed the ruling. Here again we need not discuss the jury's special findings which supported the verdict in her favor as we are concerned with a demurrer. Plaintiff's evidence showed she entered the intersection first and after repeated observations of defendant's car, believing it was stopping, entered the intersection very slowly. We applied G. S. 1949, 8-550 (a) which

gave her the right of way, she having entered the intersection first. We further held that under the conditions stated plaintiff had the right to assume defendant would yield the right of way to her. The last stated rule has been applied to similar circumstances in various cases in this and other jurisdictions.

As previously stated we think the foregoing cases and other similar ones which might be cited are not controlling in this case. It, of course, is elementary that in considering plaintiff's evidence on demurrer plaintiff is entitled to have his evidence considered in the light most favorable to him. On the other hand we also must adhere to an equally well-established rule that a party is bound by his own plain and unequivocal admissions. That is especially true where, as here, plaintiff's case stands solely on his own testimony and no physical or other facts are in dispute. Here there is no room for speculation concerning appellant's evidence. It need not be restated fully but it may be helpful to recall a few of his most pertinent admissions on which the district court sustained a demurrer to his evidence.

He admitted he did not see appellee's car long enough to estimate its speed. He did, however, admit its front end came to a stop in the north side of the intersection. On the other hand appellant admitted his truck traveled sideways 100 feet west of the intersection and did not come to a stop until after it hit the side of the south ditch. It then swung around and came to rest facing the north. Appellant was thoroughly familiar with the blind corner. He admitted he could not have seen appellee's car approaching from the south, when it passed out of sight behind the knoll, until he was entering, or had entered the intersection from the east.

Appellant admitted he did not maintain a lookout for a car to the south after he left the ravine 400 to 500 feet east of the intersection until he was in or was entering it. He admitted he could have seen a car approaching on the south road while he was at certain places between the ravine and the intersection. When asked on direct examination if he looked south again as he approached the intersection he said "Yes." But he was not asked and did not testify relative to the distance east of the intersection, if any, from which he looked again before reaching the intersection. He merely stated he looked to the north first and then to the south as he approached the intersection and saw no cars. On cross-examination he was expressly asked to fix the place at which

*he first looked again after leaving the ravine.* He stated unequivocally it was "just the instant before he struck." He repeatedly also stated the next time he looked after leaving the ravine was just as he was "coming into it or right in it, right along in there" (meaning the intersection). He testified he first saw appellee's car at that time and also stated he first saw it "After I was partly or most of the way through the intersection."

Wherever appellant may have been when he first looked again and saw appellee's car, he admitted when he looked south again after leaving the ravine it was too late to stop. He stated it happened "Just like that," and that he could not have stopped in less than fifty or fifty-five feet. Notwithstanding his full familiarity with the blind corner and that he could not see how near a car approaching from the south might be, he admitted he did nothing to be in a position to protect himself or others from injury. He admitted he did not apply his brakes but, as he stated, he went "right into the intersection." He admitted he did so at a speed which would have carried him not only through the intersection, but the distance from one fence line to the other, before he could have stopped his truck had he applied the brakes. Moreover, he not only frankly admitted he failed to attempt to get his truck under control for whatever he might encounter at the blind intersection, whether it be a vehicle which entered it first or last, but frankly admitted he did not even honk his horn to warn others of his approach to the hazardous crossing.

Was the district court justified in concluding appellant's admissions disclosed he, as well as appellee, was plainly guilty of negligence which contributed to the collision? If he was not guilty of such negligence, as a matter of law, courts would be unable to sustain a demurrer to the same admissions of defendant streetcar, bus and taxicab companies and other defendants that they ran through a completely blind intersection without regard to consequence, if they contended they had the right to do so, because they had the right of way. We think this court, like most courts, would give little, if any, consideration to such a contention. If we are to have a reasonably symmetrical pattern in our law it must be consistently applied.

Appellant, in substance, argues: He captured the right of way by getting into the intersection first and he had it because he was to the right of appellee. He, therefore, contends he was under

no duty to keep a further lookout, to reduce his speed or even to sound a warning of his approach to others who could not possibly see him. He relies on G. S. 1949, 8-550, which provides:

"(*a*) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway. (*b*) When two vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right. (*c*) The foregoing rules are modified at through highways and otherwise as hereinafter stated in this article."

In earlier years the speed of vehicles at intersections was fixed at a definite low rate of miles per hour. Appellant overlooks the statute in effect on the date of this accident, which occurred on October 8, 1951. It was G. S. 1951 Supp. 8-532. It provided no person should drive a vehicle on a public highway at a speed greater than is reasonable and prudent under existing conditions. (Amended somewhat by laws 1953, chapter 47, but not in the above particulars; G. S. 1953 Supp. 8-532.) That would be the common law rule absent a statute. That is the degree of care now required at intersections, not only in this state but generally, absent a more specific statute. (*Orr v. Hensy,* 158 Kan. 303, 308-309, 147 P. 2d 749, and cases therein cited.) We think no one will contend this collision did not occur at a place known to be exceedingly hazardous. The last mentioned statute expressly refers to hazardous places, including intersections.

In view of the point of collision, appellant's testimony relative to the point at which he first saw appellee's car, the speed at which he was driving, and the distance a car travels in a second at forty or forty-five miles per hour, it well might be debated whether appellant entered the intersection first or whether he knew who entered it first. His answer, to be noted presently, lends weight to that view. If, however, he entered the intersection first it, under no circumstances, could have been by more than a split second, according to his own testimony. In any event we accept his statement, although weak, at full face value on demurrer. It was, "Well, I would say I was in the intersection first."

Assuming he was and, of course, granting he was traveling to the right of appellee, was he under no duty to do anything whatever to avoid injury to himself and others at such a known hazardous crossing before it was too late?

Is a right-of-way statute so exclusive, inflexible and absolute as to absolve one having the prior right from all duty to exercise due

care? We have held it is not. In *Ray v. Allen,* 159 Kan. 167, 152 P. 2d 851, plaintiff was well into the intersection first. He, too, assumed the right of way absolved him of his own duty to exercise due care. He made no effort to stop within the intersection in order to avoid a collision. He said, "I could have stopped but why should I stop when the right of way was mine." The contention did not appeal to the district court or to this court. In affirming the order sustaining a demurrer to plaintiff's evidence we held the facts were not such that reasonable minds might draw different conclusions under such circumstances.

In *Cruse v. Dole,* 155 Kan. 292, 124 P. 2d 470, the driver of the car entered the intersection first from the east on a township road. Defendant entered it last from the north on a county road. There were no road signs. At a point fifty feet east of the east line of the intersection plaintiff had a clear view to the north of over 300 feet, which increased as he approached. When about twenty-five to thirty feet east of the intersection he testified he was traveling about ten to fifteen miles per hour; that he then looked north and saw defendant's car between 250 and 300 feet to the north traveling at a speed which plaintiff believed to be thirty to thirty-five miles per hour. Plaintiff thought he could stop in ten feet. After seeing defendant's car he entered the intersection. He did not look north again but proceeded without deviating or putting on his brakes. The next time he saw defendant's car was when it was entering the intersection. He heard the brakes of defendant's car screeching. He said he looked up and defendant's car "was right on top of me." Each car was on its right side of the road. Defendant's car hit plaintiff's car on the right side just beyond the front wheel.

Plaintiff contended he entered the intersection first and that under G. S. 1941 Supp. 8-550 (a) he had the right of way; he, therefore, had the right to assume defendant would obey the law and stop or so control his car that plaintiff could pass safely. The court refused to sustain such a contention and held the mere fact plaintiff had the right of way did not absolve him from his own negligence in failing to keep a lookout for defendant's car and observe what defendant might do; he owed such duty for his own welfare and that of his wife, who was riding with him, and who died as a result of injuries sustained. We further stated:

"We think that men of reasonable minds would agree that the conduct of Mr. Cruse in operating his car was below the standard to which he should have conformed for his own and his wife's safety." (p. 296.)

Plaintiff's negligence, however, was held not to be imputable to his wife under the circumstances narrated in the opinion.

*Taggart v. Yellow Cab Co. of Wichita,* 156 Kan. 88, 131 P. 2d 924, involved a collision at a city street intersection between a taxicab in which plaintiff was the passenger and another vehicle. There were no stop signs. The taxicab driver testified he entered the intersection first. Concerning the taxicab driver we, in part, said:

"It is necessary to touch upon only one other feature of the cab driver's negligence which is not specifically covered by the special findings. He testified, 'I did not stop my car before entering the intersection, notwithstanding the fact my vision *was obstructed by cars standing at the curb.*' Irrespective of the absence of a stop sign, it manifestly was his duty, *if his view was obstructed, to have stopped or to have slowed down sufficiently to have enabled him to avoid colliding with the other car.* He did neither and his negligence contributed to the resulting collision." (p. 94.) (Italics supplied.)

This court held both defendants, under established facts, liable, as a matter of law, for their failure to exercise reasonable care at a hazardous intersection. In the instant case all essential facts are established by appellant's admissions.

*Orr v. Hensy,* 158 Kan. 303, 147 P. 2d 749, involved another collision at a rural intersection. There were no stop signs. Plaintiff approached from the east and defendant from the north. Plaintiff was familiar with the intersection. He said he saw no cars approaching as he neared the intersection. He said he saw defendant's car for the first time when it was twenty or thirty feet north of him. Plaintiff's car was struck after its front wheels had crossed over the center of the north and south road. There was no sharp dispute in the evidence and the jury's answers were in exact accord with plaintiff's evidence relative to the matters on which he testified. The principal question on appeal was whether the jury's special findings convicted plaintiff of contributory negligence as a matter of law. The jury, in part, found there was nothing which prevented plaintiff from seeing defendant's car approaching from the north when plaintiff was eighty or ninety feet or when he was 200 feet east of the crossing; that defendant's car was 150 to 180 feet north when plaintiff was eighty or ninety feet east of the intersection. Plaintiff entered the intersection first and insisted he, therefore, had the right of way under G. S. 1949, 8-550 (a). We concluded the fact he had the right of way did not absolve him of his own negligence in having failed to keep a proper lookout

for defendant's car and to keep his car under reasonable control. We held:

"A motorist about to enter an intersection of public roads momentarily ahead of another motorist on his right cannot be heard to excuse his own failure to observe the approach of the other on the presumption that the latter whom he did not see would yield the right of way." (Syl. ¶ 3.)

In the course of the opinion it was said:

"In this case, of course, the two cars did not enter the intersection at exactly the same time. Plaintiff's car entered the intersection at 20 miles per hour, which would be 29⅓ feet per second. As the two cars collided about 27 feet west of the point where plaintiff's car entered the intersection, defendant's car could not have entered it more than one second behind plaintiff's. It may well be doubted whether the legislature contemplated that the right of precedence at a country crossroads would turn on the matter of a split second between approaching motorists." (p. 310.)

The books are filled with decisions holding a blind intersection, without stop signs or other traffic signals, presents a highly hazardous place which all parties should approach with caution commensurate with the danger involved and this is especially true where its hazards are well known. The established rule concerning the duty of a driver entitled to a right of way is plainly stated in the textbooks of recognized authorities. In 3 Berry on Automobiles, 7th ed., § 3.02, the author states:

"In approaching an intersection *where his view of the intersecting highway* is obstructed a motorist should have his car under such control that he can avoid collision with approaching vehicles *without regard to the question of priority of ways.*" (p. 8.) (Italics supplied.)

In 3-4 Huddy's Cyclopedia of Automobile Law, 9th ed., after discussing various right-of-way statutes, it is said:

"A statute so fixing the right of way is to be reasonably construed and applied, so as to embrace all situations in which the danger of collision exists. *Its main purpose is to demand care of the driver commensurate with the danger of collision. This right of way is not an absolute right, but a relative right. The statute fixing it is a road regulation and not an inflexible standard by which to decide questions arising out of collisions at intersections.*" (p. 254, 255.) (Italics supplied.)

In 2 Blashfield's Cyclopedia of Automobile Law and Practice, perm. ed., § 1024, it is stated:

"Although a driver of a motor vehicle has the right of way at an intersection over a driver approaching on an intersecting road, either because of priority of approach or because the traffic regulations give the right of way to vehicles approaching from the right or to travelers on favored streets or going in favored directions, the right so given is not exclusive, but instead is at all

times relative and subject to the fundamental common-law doctrine that he should exercise the right so as to avoid injury to himself or others."

The reader is referred to the numerous decisions supporting the text in each of the foregoing authorities. An early case (1920) is *Rosenau v. Peterson,* 147 Minn. 95, 179 N. W. 647. Although certain language in the opinion has been explained in some of the later cases its fundamental statement has been repeatedly cited in later Minnesota cases and in cases from numerous other jurisdictions. In discussing a right-of-way statute the court held:

"The rule of the statute is one of convenience and was intended to standardize duties and obligations at intersecting highways and streets, but does not absolve one having the prior right from independent acts of negligence at such crossings." (Syl. ¶ 3.)

Appellant, however, in substance, contends:

The right-of-way statute is exclusive and renders all of his acts free from blame. He stresses the recognized rule often applied that where a party approaching an intersection sees another motorist has entered the intersection first, the latter has the right to assume the former will obey the law and yield the right of way. The rule is a wholesome one, as a general traffic regulation but, as previously indicated in this opinion, the person possessing the prior right may not arbitrarily rely on it without exercising reasonable care for the safety of himself and others. That is likewise true of the rule which grants the right of way to the driver on the right. The assumption rule, relied on by appellant, has been applied in various cases cited by the foregoing authors, under appropriate facts and circumstances, but we have found no case in which courts have permitted a party to invoke that rule in his own behalf where he himself has violated the rule, or rules, of the road, whether by failure to keep a timely lookout for other vehicles, unreasonable speed in view of the hazard involved, failure to warn of his approach to the dangerous crossing or some other negligent act which contributed to the injury sustained. The rule frequently applied by various courts was well stated quite early in *Eddleman v. Askew,* 50 Ga. App. 540, 179 S. E. 247, as follows:

"His right of way and right to assume the absence of negligence by others do not entitle him to drive blindly or recklessly across an intersection, especially one which might be termed a 'blind intersection,' without regard to the conditions and consequences."

The authorities generally agree that although a person holding

the prior right need not anticipate the other person will not obey the rule, or rules, of the road the one possessing the prior right nevertheless may not disregard his own duty to avoid a collision which in the exercise of reasonable care he could have prevented.

So, too, in our Orr case, *supra,* this court said:

"It is vigorously argued in plaintiff's behalf that plaintiff had a right to rely on defendant's duty to obey the rules of the road and yield to plaintiff the right to enter the intersection first. We are at a loss how to apply that to the case at bar. If plaintiff had looked with sufficient care to have observed defendant's approaching car, he could, of course, measurably depend upon defendant's obedience of the rules of the road. But he himself did not observe the rules of the road. He did not look with sufficient care to see defendant's car speeding towards the crossing; and it is impossible to excuse his negligence on the fallacious presumption that the defendant whom he did not see would yield to him the right of precedence to cross the intersection." (p. 311.)

Where a plaintiff's own evidence shows him to be guilty of negligence which precludes his recovery, a defendant may take advantage thereof by demurrer. (*Houdashelt v. State Highway Comm.,* 137 Kan. 485, 21 P. 2d 343; *Cruse v. Dole,* supra.) A majority of this court has no hesitancy in concluding the admitted conduct of appellant at the known blind intersection clearly fell so far below the standard to which it should have conformed that reasonable minds could not properly be expected to reach different conclusions therefrom. His evidence admits he violated not only one but every reasonable precaution after leaving the ravine 400 to 500 feet east of the crossing. We think the least he could have done would have been to sound a warning of his approach when traveling at the rate of approximately sixty to sixty-seven feet per second. But he admits he failed to do even that.

Whether a negligent act, or acts, constitute the legal and efficient cause, or a contributing cause of injury, is ordinarily a jury question. Where, however, the evidence involved is entirely uncontradicted or the material facts on which a party relies are all admitted a question of law is presented for determination of the court. A few of the cases so holding are *Lambel v. City of Florence,* 115 Kan. 111, 222 Pac. 64; *Whitcomb v. Atchison, T. & S. F. Rly. Co.,* 128 Kan. 749, 280 Pac. 900; *Richards v. Chicago, R. I. & P. Rly. Co.,* 157 Kan. 378, 139 P. 2d 427; *Cruzan v. Grace,* 165 Kan. 638, 198 P. 2d 154; *Cotter v. Freeto,* 166 Kan. 23, 199 P. 2d 484; *Garrison v. Hamil,* 176 Kan. 548, 271 P. 2d 307. Here appellant's admissions plainly disclosed the injury resulted from the concurrent negligence of both motorists.

We have not overlooked other cases cited by the parties and have examined numerous additional authorities. It frankly should be stated there is not complete harmony on all aspects of the question. Some of the lack of unanimity results from a variance in statutes and that is also true in the same jurisdictions resulting from subsequent legislation. Different statutory provisions relating to intersections at through highways also must constantly be borne in mind in order to avoid confusion of thought. (*Revell v. Bennett,* 162 Kan. 345, 349-350, 176 P. 2d 538.)

The order sustaining the demurrer is affirmed.

WERTZ, J. (dissenting): I am unable to agree with the majority of the court, and I will attempt to set forth my views briefly on the questions concerning which I differ. The rule of law is well established in this and other jurisdictions that in testing the sufficiency of evidence as against a demurrer, the court shall consider all of plaintiff's evidence as true, shall consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom, and disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory, nor weigh any differences between his direct and cross examination, and if so considered, there is any evidence which supports or tends to support plaintiff's case on any theory, the demurrer should be overruled. A few of our more recent cases adhering to this rule are: *McCracken v. Stewart,* 170 Kan. 129, Syl. ¶ 1, 223 P. 2d 963; *Fry v. Cadle,* 171 Kan. 14, 229 P. 2d 724; *Blankenship v. Fraker,* 173 Kan. 438, 439, 249 P. 2d 683; *Revell v. Bennett,* 162 Kan. 345, Syl. ¶ 1, 176 P. 2d 538; *Huggins v. Kansas Power and Light Co.,* 164 Kan. 27, 187 P. 2d 491; *Gabel v. Hanby,* 165 Kan. 116, Syl. ¶ 1, 193 P. 2d 239; *Samms v. Regier,* 167 Kan. 556, 207 P. 2d 414; *Hukle v. Kimble,* 169 Kan. 438, 441, 219 P. 2d 434; *Schneider v. Stewart,* 170 Kan. 158, 163, 223 P. 2d 698; *Cain v. Steely,* 173 Kan. 866, Syl. ¶ 3, 252 P. 2d 909; *Siegrist v. Wheeler,* 175 Kan. 11, Syl. ¶ 1, 259 P. 2d 223; *Messinger v. Fulton,* 173 Kan. 851, 252 P. 2d 904; *Hill v. Southern Kansas Stage Lines Co.,* 143 Kan. 44, 53 P. 2d 923. Other cases holding to the same effect may be found in 5 Hatcher's Kansas Digest [Rev. Ed.], Trial, § 151, and West's Kansas Digest, Trial, § 156(2) and (3).

It is also a well-established rule in this state as well as in other jurisdictions that in determining whether a plaintiff is guilty of contributory negligence when tested by a demurrer, the question must be submitted to the jury if the facts of record are such that reason-

able minds, in the exercise of fair and impartial judgment, might reach different conclusions thereon. Moreover, the question whether a negligent act is the proximate cause of an injury, and whether an ordinarily reasonable, prudent man would have seen that injury might have occurred as a result of a negligent act, is also a question of fact for the jury. My views are best expressed in the opinion in *Lawrence v. Kansas Power & Light Co.*, 167 Kan. 45, 49, 204 P. 2d 752, wherein Mr. Chief Justice Harvey, speaking for this court stated:

"The legal questions here involved are so well settled in our law that they need not be labored. The actions were ones at common law in which plaintiffs sought damages alleged to have resulted from defendant's negligence, and defendant had pleaded contributory negligence of the plaintiffs. These are the kinds of actions in which each party is entitled to a trial by jury as a matter of right. *They should not be converted into trials by the court.* Negligence is the lack of due care. *The instances are relatively rare when the facts are such that the court should say that as a matter of law the negligence alleged has been established.* Before the court should make such a holding the evidence should be so clear that reasonable minds, considering it, could have but one opinion, namely, that the party was negligent. In these cases we think the contributory negligence of plaintiffs was clearly a question of fact for the jury. More than that, plaintiffs were not required to anticipate that with their car in the intersection defendant's bus would be driven into it and against their car at a speed of twenty-five to thirty miles per hour, with its driver not watching enough to know that the car was in the intersection. Under the evidence the jury might very well have found such acts of defendant to be the proximate cause of the injury." (Our italics.)

This reasoning has been reasserted and cited with approval in *Blankenship v. Fraker*, 173 Kan. 438, 441, 249 P. 2d 683; *Cain v. Steely*, 173 Kan. 866, 873, 252 P. 2d 909; *Fry v. Cadle*, 171 Kan. 14, 17, 229 P. 2d 724; *Siegrist v. Wheeler*, 175 Kan. 11, 15, 259 P. 2d 223; *Thompson v. Barnette*, 170 Kan. 384, 387, 227 P. 2d 120, and *Samms v. Regier*, 167 Kan. 556, 207 P. 2d 414. We said in *Mehl v. Carter*, 171 Kan. 597, 237 P. 2d 240:

"The question of negligence, including the determination of proximate cause, ordinarily rests in the province of the jury." (Syl. ¶ 3.)

See, also, *Rowell v. City of Wichita*, 162 Kan. 294, 176 P. 2d 590; *Atherton v. Goodwin*, 163 Kan. 22, 180 P. 2d 296. Many other cases of like effect may be found in 4 Hatcher's Kansas Digest [Rev. Ed.], Negligence, §§ 72 to 75, incl., and West's Kansas Digest, Negligence, § 136(9), (14), (25) and (26).

The right of every individual citizen to a trial by jury is of ancient origin, and as now practiced is the result of a long process of de-

velopment. Having early been regarded as a right, it was in England first guaranteed as such by the Magna Charta. It was introduced in this country by the English colonists who considered it a right under the English law, and is regarded as a basic and fundamental feature of American jurisprudence, and has since the organization of our government been incorporated in the form of expressed guaranties in the constitutions of both state and federal governments. It is a substantial and valuable right and should never be lightly denied. The law favors trial by jury, and the right should be carefully guarded against infringements (50 C. J. S., Juries, 722) and, as stated, a trial court in the exercise of its prerogatives in determining questions of law, only, in these kinds of cases should not usurp the power and function of the jury in weighing evidence and passing upon questions of fact. Instances are relatively rare when facts are such that the court should say as a matter of law negligence alleged has been established. Juries today are composed of men and women of standing in the communities. They are farmers, merchants, bankers, engineers, industrialists, laborers, professional tradesmen, businessmen of all kinds and citizens from all walks of life, a real cross-section of citizens of the communities. A vast majority of these people are very well educated and experienced in all phases of life, and are well able to justly pass upon the facts in any given lawsuit between the litigants.

Much is made of the fact that the plaintiff entered the intersection in question at the speed of forty to forty-five miles an hour, and that it was an excessive speed under the circumstances. Who is to determine, under the conditions of this intersection, what speed would have been a proper speed? Should it have been thirty, twenty, or ten miles per hour, or should the plaintiff have stopped his automobile to ascertain whether anyone was approaching from the township road and, if his speed constituted negligence, was it one of the proximate causes of the collision? It appears to me that these were questions to be determined by the jury. Since present day traffic on the highways has become so extensive, can it be said as a matter of law that one should be required upon approaching an intersection of a township road to slow his car to a crawl, or stop, in the absence of highway slow or stop signs, to ascertain whether others using the highway would obey the law of the road? I think not. Actions of this kind present questions of fact upon which reasonable minds might reach different conclusions, and should be

submitted to the jury for their determination under proper instructions from the court.

I am of the opinion that the judgment of the trial court should be reversed and a new trial ordered.

HARVEY, C. J., and SMITH, J., join in the foregoing dissent.